MONTGOMERY WARD, INC.,
Appellant–Defendant,

v.

Patricia A. KOEPKE and James Koepke, Appellees–Plaintiffs.

No. 37A03–9010–CV–438.

Court of Appeals of Indiana,
Third District.

Jan. 30, 1992.

---

Daniel A. Medrea, Karen L. Hughes, Lucas, Holcomb & Medrea, Merrillville, for appellant-defendant.

Hawk P.C. Kautz, Merrillville, Terrance L. Smith, Smith & DeBonis, East Chicago, for appellees-plaintiffs.

GARRARD, Judge.

The Koepkes brought an action for personal injuries and loss of consortium against Montgomery Ward, Inc. alleging negligence. The case was tried by jury, a verdict was returned for Koepkes and judgment was entered. Ward appeals contending that the court erred in rejecting its attempted use of one or more of ten exhibits which it characterizes as medical records.

Its primary assertion is that all ten exhibits should have been admitted into evidence pursuant to the agreement of the parties in a proposed pretrial order. Koepkes respond that their admission was not stipulated and that in the absence of any evidence laying a proper foundation for their reception, they were properly excluded on the basis of Koepkes' objection to that effect. Clearly, Ward neither called any witnesses to lay the proper foundation nor requested any continuance so as to be able to do so.

Equally clearly, no pretrial order was entered by the court, nor was a proposed order signed by counsel or the parties. An unsigned order was tendered, however, and the order book reflects that by telephonic communication the court was advised that the attorneys had approved the proposed order and were prepared to sign it at the commencement of trial the following

Wednesday. Moreover, during trial Koepkes' counsel affirmed that they had been prepared to sign the order and that the order "states exactly what the situation is", referring to the potential admission of the exhibits in question.

The pertinent portion of the proposed order appears at Section I, and commences, "There were identified for evidence:" This is followed by 26 numbered paragraphs, each identifying a plaintiffs' exhibit. Paragraphs numbered 27 and 28 refer to all depositions taken herein and all interrogatories answered herein. Paragraph number 29 provides, "Defendant's exhibits may include any or all of the following:" and is followed by 24 lettered subparagraphs (A through X) identifying exhibits and "group exhibits", including the "group exhibits" subsequently excluded. Paragraph 30 then states,

> Except as otherwise indicated, the authenticity of received exhibits has been stipulated, but they have been received subject to objections, if any, by the opposing party at the trial as to their relevancy and materiality. If other exhibits are to be offered and their necessity can reasonably be anticipated, they will be submitted to opposing counsel at least ten (10) days prior to trial.

> Exhibits which can be obtained only by a subpoena duces tecum shall not be covered by this requirement, but counsel for the party offering such exhibits, other than those designated as such above, shall advise opposing counsel of the nature of such exhibits at least ten (10) days prior to trial.

The document filed with the court does not constitute a pretrial order because it was never entered as such by the court. Trial Rule 16(J). That, of course, does not prevent the enforcement of any stipulations concerning the facts or evidence actually entered into by the parties. Here the question is not whether the parties made a stipulation concerning the ten exhibits in question, but what their stipulation meant. In determining that question the court should enforce the stipulation as to all matters contained or necessarily included therein, but should not construe the stipulation to admit matters which were obviously intended to be controverted. *Anacomp, Inc. v. Wright* (1983) Ind.App., 449 N.E.2d 610.

■ Ward first argues that the stipulation of authenticity supplies all the necessary foundation requirements for admission of the exhibits. It cites *Lyons v. State* (1982) Ind., 431 N.E.2d 78 in support. Ordinarily, authenticity denotes that a document is genuine, true or real. It is the writing that its proponent claims it to be. *See, e.g., McAllister v. George* (1977) 73 Cal.App.3d 258, 140 Cal.Rptr. 702. It is not unusual, however, for parties to be willing to stipulate to the authenticity of documents, or copies of documents, without intending to imply anything about whether they are properly admissible into evidence. We do not read *Lyons* as holding to the contrary.

In *Lyons* the state argued on appeal that an exhibit consisting of a handwritten notation from a police investigative file had been properly excluded from evidence "because there was no foundation testimony elicited *to establish the authenticity of the document.*" 431 N.E.2d at 80. (Our emphasis.) The court held that the argument failed because the state had already stipulated authenticity. The decision did not purport to address any foundational prerequisites beyond the authenticity of the document and should not be read as doing so. We find that a stipulation of authenticity does not create a necessary implication that the subject of the stipulation is thereby rendered fully admissible into evidence.

■ Ward additionally argues that the language of the proposed order referring to "received" exhibits must be interpreted to mean that the exhibit was received in evidence, or that it was receivable into evidence subject only to objections as to relevancy and materiality. We do not find its meaning so clear.

Initially we note that to be received in evidence, an exhibit requires a ruling by the court either during trial or in a pretrial order. It is clear that no such ruling was made here. Moreover, if the parties in-

tended as a result of their pretrial conference that certain identified exhibits were to be admitted simply upon offer by one of the parties, the pretrial order should make that fact clear by expressly stating that such exhibits *were received in evidence. See, e.g.* Rules of the United States District Court for the Northern District of Indiana, Rule 21, Appendix A, subdivision I (form of pretrial order). By contrast, the proposed order in the present case merely stated that the enumerated exhibits were identified and that they were agreed to be authentic.

Secondly, when the exhibits were offered and the objection was interposed at trial, Koepkes' counsel argued to the court that the designation "received" was intended to refer to exhibits which had been delivered to Koepkes for review, and he represented to the court that Ward's exhibits had not, in fact, been submitted for his examination. (Thus, it was his contention that because the exhibits had not been received, their authenticity had not been stipulated.) We mention this instance to illustrate that in the context of the pretrial conference there are two distinct and available meanings for the term "received." It may refer to reception into evidence, or it may refer to reception for examination by opposing counsel.

Thirdly, an examination of the exhibits themselves may be helpful in ascertaining the intention of the parties. All ten of the exhibits in question were identified as "group" exhibits. A review of Exhibit E is illustrative. (It is identified as "medical records of Dr. DeVine" in the proposed pretrial order but in the transcript appears as the "medical records of Dr. Salberg.") The exhibit is fifteen pages long and is made up of the following separate documents: a page of handwritten notes, a letter bearing the stamped signature of a Dr. Kinasiewicz reporting a test and his opinion, six letters bearing different dates signed by Dr. Salberg and addressed to Dr. Bonjean expressing Dr. Salberg's opinions, a two page EMG report signed by Dr. Salberg, a report by Dr. Salberg of a nerve test stating his opinion, an opinion letter from someone at St. Anthony Medical Center, an opinion letter from Dr. Malak, and a

two page opinion letter from a physical therapist. The exhibit presents apparent problems not only as to the qualifications necessary to state an expert opinion, but as to the hearsay nature of a substantial portion of its contents.

The problematic nature of the exhibits, coupled with the lack of any clear expression that the parties had stipulated to their admission, leads us to conclude that the trial judge committed no error in rejecting them over timely objection.

In addition, we would be remiss if we did not underscore the fact that this entire problem might have been avoided had the parties and court fully utilized the provisions for a pretrial conference and order. Had the court explored the parties' contentions concerning the exhibits it is probable that agreement could have been reached as to those portions which might be admitted without the necessity of securing the doctor's attendance at trial and those portions which would require appropriate sponsoring testimony if they were to be considered by the jury. In that regard we note that TR 16(F), which addresses the refusal of a party to stipulate concerning facts or exhibits, should be read in conjunction with 16(D) which enjoins the parties to be prepared to enter into stipulations concerning facts, issues and exhibits, and 16(K) which authorizes the court to impose sanctions where an attorney is grossly unprepared to participate in the conference.

We turn now to the additional contentions urged by Ward relating to its attempted other uses of the excluded exhibits.

█ It first asserts it should have been permitted to use Dr. Malek's records to refresh the recollection of Mrs. Koepke. The record discloses that counsel asked Mrs. Koepke if it was not true that she had consulted Dr. Malek about a rash and she answered, "no." There was therefore no basis for seeking to refresh her recollection. If Ward wished to contradict her answer it could have called Dr. Malek to testify.

Ward next asserts it was erroneously prevented from using the records of the speech therapist and Dr. King to impeach Mrs. Koepke. Its argument is subject to the same flaw. A witness may be impeached by her own prior statements. We agree that once the proper foundation has been laid and the witness denies making the statement or does not recall it and the statement concerns a material issue, the examiner may introduce extrinsic evidence of the inconsistent statement, but that evidence must be in a form that makes it otherwise admissible. As offered, the documents in question had not been admitted into evidence and were merely hearsay reports. They were not rendered admissible because a witness, in effect, denied their accuracy.

Finally, Ward contends that the overall conduct of the trial was highly prejudicial and constituted reversible error. In addition to the matters already discussed herein, Ward supports this assertion with two specific claims. It contends the court erred in sustaining an objection during opening statement when counsel began to tell the jury of the opinion of a physician who was not going to be called as a witness, and that it was error to permit a physician to testify in person when it had been anticipated that his deposition was going to be used in lieu of live testimony.

Control of opening statement is a matter within the sound discretion of the trial court. Its purpose is to provide the jury with a preview of what the parties believe the evidence will establish so that the jurors may better grasp the import of the testimony as it comes from the witness stand. We find no abuse of discretion in the court precluding a party from mentioning facts and opinions which it is made to appear will not be admitted at trial. Furthermore, since opening statements are not evidence and may not be taken as such by the jury, there appears to be little harm to the party absent serious restriction of his ability to state what the evidence will show. The potential harm concerning a specific item of evidence concerns its admission or exclusion from evidence.

As for the use of live testimony when a witness has already given a deposition to be used as evidence, we are aware of no prohibition to doing so and counsel has cited none. If for some reason counsel was unfairly surprised, a continuance could have been requested to meet any unanticipated matter. Of course, if the witness changed his testimony, counsel could have introduced the deposition for impeachment. Ward did neither.

We find no reversible error. The judgment is affirmed.

HOFFMAN, P.J., and CHEZEM, J., concur.