ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

Jerry J. McGaughey Jeffrey Modisett

Vincennes, IN Attorney General of Indiana

Christopher L. LaFuse

Deputy Attorney General

Indianapolis, IN

IN THE

SUPREME COURT OF INDIANA

JEFFREY SCOTT MORRISON, )

)

Appellant (Defendant below), )

)

v. )Cause No. 42SOO-9605-CR-392

)

STATE OF INDIANA, )

)

Appellee (Plaintiff below). ) 

APPEAL FROM THE KNOX CIRCUIT COURT

The Honorable Murphey C. Land, Judge

Cause No. 42C01-9508-CF-40

SHEPARD, Chief Justice.

Jeffrey Scott Morrison and Danjo Graziano were tried by a jury in a joint trial.  The jury found Morrison guilty on two counts:  murder, a felony,
(footnote: 1) and battery, a class B misdemeanor.
(footnote: 2)  The jury also found Graziano guilty of murder.  The court sentenced Morrison to sixty-five years in prison for murder, with a 180-day  concurrent sentence for battery.

Morrison raises two issues:

1) Whether the trial court abused its discretion by limiting Morrison’s cross-examination of co-defendant Graziano and by refusing to allow Graziano’s written agreement with the State to be introduced at trial, and,

2) Whether the trial court abused its discretion by finding the absence of certain physical evidence irrelevant.  

Facts

The evidence at trial revealed that on August 1, 1995, Morrison, Graziano, Rita Bilskie, April MacKinnon, and her son Jake were at a tavern in Vincennes.  MacKinnon was in the process of moving and had been staying with Bilskie, but that evening she was looking for another place to stay.  While at the bar, Steven Tatum, an acquaintance of Graziano’s, offered MacKinnon and Jake lodging at his apartment.  Bilskie later took MacKinnon, Jake, Tatum, Graziano, and Morrison to Tatum’s apartment.

Soon after arriving at Tatum’s apartment, Morrison, Graziano, and Bilskie departed.  MacKinnon, who was Graziano’s girlfriend, remained at Tatum’s with Jake.  Tatum made sexual advances
 
toward MacKinnon.  When she declined his invitations, he grabbed her wrists.  She pulled away from him, and she and her son quickly left the apartment.  The two wandered the street until a concerned neighbor took them into his home.  MacKinnon later saw Morrison pass in front of the house, and she relayed to him what happened at Tatum’s apartment.  MacKinnon and Morrison then went to Tatum’s, where Morrison beat Tatum.  Afterward, Morrison and MacKinnon took Jake to Bilskie’s apartment.    

Graziano was already at Bilskie’s when Morrison and MacKinnon arrived.  After hearing MacKinnon’s story of her encounter with Tatum, Morrison and Graziano decided to go to Tatum’s apartment and beat him further.  Before they left, MacKinnon gave one of them a gun which she had previously taken from her stepfather.
(footnote: 3)  

In his apartment, Tatum confessed to Morrison and Graziano that he had
 
made advances toward MacKinnon.  Graziano struck Tatum in the face, knocked him to the floor, kicked him several times, and dragged him by the hair into the bedroom.  Graziano
 
then shot Tatum in the knee, and one of the two defendants shot Tatum twice in the head.  Tatum died of multiple blunt injuries and multiple gunshot wounds.  Over the next few days, Morrison and Graziano admitted to several individuals that they beat and shot Tatum, and the State charged them both with murder and battery.  Both Morrison and Graziano claim the other one fired the fatal shots.  

I.  Limitation on Cross-Examination Regarding the Agreement

Before trial, Graziano entered into a written agreement to testify against Morrison in exchange for charging him with a lesser crime.  The agreement was contingent on Graziano passing a polygraph examination.  When Graziano failed the polygraph, the State did not amend the information.  At trial, Morrison attempted to cross-examine Graziano about this conditional agreement, but the court limited questioning on this subject to: "You cut a beneficial deal with the State, did you not?"  

Morrison argues that the trial court erred by limiting his cross-examination of Graziano regarding this agreement and by 

excluding the written agreement from evidence because exclusion of this matter misled the jury and violated his right to a fair trial.    

The trial court did not err.  This Court has long held that beneficial agreements between an accomplice and the State must be revealed to the jury.  
Morgan v. State
, 275 Ind. 666, 419 N.E.2d 964 (1981); 
Newman v. State
, 263 Ind. 569, 334 N.E.2d 684 (1975).  This rule serves to help the jury better assess the reliability and honesty of the felon-witness.  
Lewis v. State
, 629 N.E.2d 934, 937 (Ind Ct. App. 1994)("The jury should have the evidence related to any consideration a felon-witness receives in exchange for testifying on behalf of the State").  

Here, the State did not extend any consideration to Graziano,  because Graziano did not pass the polygraph examination and thus secured no consideration from the State.  As a result, there was no deal to disclose to the jury.  The trial court’s decision to limit Graziano’s testimony was not an abuse of discretion.  Likewise, there was no need to submit the written agreement into evidence.  

Graziano was charged with murder and tried jointly with Morrison.  With Graziano facing the possibility of sixty-five years in prison, the jury was well-aware that Graziano had a powerful incentive to lay all the guilt on Morrison.  The rule requiring disclosure of beneficial agreements serves to alert the jury to a 

witness’s credibility, or lack thereof.  The jury needed little reminder here.      

II. Limitation on Cross-Examination Concerning the Evidence

Morrison claims the court abused its discretion by prohibiting him from inquiring about the State’s investigation and the acquisition of scientific evidence.  Morrison claims the lack of physical evidence placing him at the scene of the crime was critical to contradict the testimony of the State’s eyewitness.  He claims that disallowing questioning about or comment on the evidence deprived him of a fair trial. 

 

If evidence is of marginal relevance, the trial court has the authority to prohibit cross-examination on that topic.  
Ingram v. State
, 
547 N.E.2d 823
 
(Ind. 1989).  Morrison sought to cross-examine a police officer for the purpose of showing there was not a trace of evidence linking him anywhere in Tatum’s apartment, except in the kitchen and bedroom.  None of this evidence is relevant to Morrison’s guilt or innocence.  Indiana Code Section 35-41-2-4 provides that if a person knowingly or intentionally aids another person to commit an offense, he himself commits that offense.  Ind. Code Ann. § 35-41-2-4 (West 1986).  Morrison admitted in open court that he was in Tatum’s home to do him harm 

on two occasions:  first when he initially beat Tatum and, second, when Tatum was killed.

Morrison’s defense thus boils down to an assertion that Graziano fired the fatal shots.  Morrison argues that Graziano’s testimony is the only evidence regarding his conduct in Tatum’s apartment before and during the murder of Tatum.  Whether Morrison fired the fatal shots is immaterial to his guilt, however, because an individual who aids another person to commit a crime is as guilty as the actual perpetrator.  
Pike v. State
, 532 N.E.2d 3 (Ind. 1989).  "A person may be convicted as a principal upon evidence that he or she aided or abetted in the perpetration of the charged crime.  There is no separate crime of being an accessory to a crime or aiding and abetting its perpetrator."  
Taylor v. State
, 495 N.E.2d 710, 713 (Ind. 1986).  The court’s limitations on this cross-examination were not an abuse of discretion.

Conclusion

We affirm the judgment of the trial court.

Dickson, Sullivan, Selby, and Boehm, JJ., concur.

FOOTNOTES
1: 
Ind. Code Ann. § 35-42-1-1 (West Supp. 1996).

2: 
Ind. Code Ann. § 35-42-2-1 (West Supp. 1996).

3: 
The record is not clear as to who carried the gun to Tatum’s apartment.