Robert J. HIGHTOWER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–0001–CR–00022.

Court of Appeals of Indiana.

Oct. 6, 2000.

James T. Flanigan, Skiles & Cook, Indianapolis, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Appellant, Robert Hightower, claims on appeal that fundamental error occurred during his trial when a witness testified that Hightower had invoked his *Miranda* right to remain silent, that the trial court erred in excluding a facsimile from evidence and that his consecutive sentences were unreasonable. Because the evidence in this case was overwhelming, the testimony regarding Hightower's decision to remain silent did not constitute fundamental error. Furthermore, the trial court did not abuse its discretion in excluding from evidence a facsimile that was not authenticated. Finally, because his crimes did not arise from a single criminal episode, his consecutive sentences were not unreasonable. Therefore, we affirm.

### Facts and Procedural History

Hightower worked as a bookkeeper for several businesses owned by Derek Daly. As a bookkeeper, Hightower reviewed invoices, balanced the books, reconciled the bank statements, had access to checks and had the ability to print checks on Daly's computer. Hightower also prepared checks for Daly's approval and signature, kept all cancelled checks and maintained Daly's financial records in a computer program.

After Hightower stopped working for Daly, Daly discovered $17,500 missing from his accounts. Over a three month period, four checks had been written to Hightower or his business. Two of the checks, one for $8,000 written on February 14, 1997 and the other for $6,000 written on March 18, 1997, were written to C.I.A. Commercial Cleaning Service, a company Hightower owned. The two checks written to C.I.A. indicated two different addresses for C.I.A. However, there was no C.I.A. Commercial Cleaning business located at either of the addresses. The two remaining checks were written to Hightower in the amounts of $2,500 and $1,000 in January, 1997. Daly denied signing or authorizing the checks. Daly did not know of C.I.A. Commercial Cleaning until he discovered these checks. Although all of Daly's other cancelled checks were recovered, the checks written to C.I.A. and Hightower were not.

Furthermore, during Hightower's period of employment as bookkeeper several of the computer records of Daly's accounts were altered. Specifically, some of the recovered cancelled checks were entered in Daly's computer accounting program for higher and lower amounts than the amounts for which the checks were cashed. Record at 803. For example, check 1261 was entered in the computer for $4,714.39, but was cashed for $1,629.28 while check 1318 was entered in the computer for $1,548.93 and was cashed for $548.93. Record at 807. All together, the alterations masked about $5,600 of the shortage in Daly's accounts.

At trial, Hightower did not dispute that he received and cashed the four missing checks. However, he claimed that the checks were compensation for services rendered and represented a loan that he repaid. Hightower further claims his compensation was set at $500 per week or $2000 per month. On the other hand, Daly claims that the checks bear a forgery of his signature and do not represent compensation or a loan repayment. Daly claims that Hightower was paid $11.00 per hour.

The prosecution's first witness, Officer Dave Underwood, testified that he questioned Hightower about the checks missing from Daly's office. Officer Underwood commented on Hightower's decision to invoke his right to an attorney. Hightower also offered a facsimile for admission into evidence. He claimed that Daly's employee, Debbie Kamen submitted the fax to Hightower's divorce attorney as a statement of Hightower's salary for a child support determination. The State objected to the admission of the fax on the grounds that it was forged, it was hearsay, and that it was unreliable. The court excluded the facsimile.

Hightower was convicted on two counts of theft and two counts of conversion. He was given the maximum sentence on all counts to be served consecutively, with the conversion misdemeanor sentences suspended. This appeal followed.

## Discussion and Decision

Hightower raises three challenges to his convictions. First, he claims that fundamental error occurred when the trial court allowed the prosecutor to question a witness regarding his post-*Miranda* silence during the trial. Next, Hightower contends it was error for the trial court to exclude the facsimile from evidence. Finally, Hightower claims that his sentence is unreasonable.

### I. Miranda Warning

■ Hightower contends that his trial was fundamentally unfair because a State's witness commented on his post-*Miranda* silence in response to questions from the prosecution. At trial, the State presented evidence that Hightower was read the *Miranda* warnings and questioned about the alleged crimes. The following exchange occurred during Officer Dave Underwood's testimony:

Q: What did you do once you made contact with him?

A: We explained what we needed to talk to him about, the checks from Mr. Daly's office. At first he was willing to talk to us until he found out it was going to be tape recorded and then he changed his mind. Once he invoked his right to an attorney, we ceased contact about the statement and served him with the search warrant for the handwriting sample, which he provided for us.

Q: Did you explain his Miranda rights for him?

A: Yes.

Q: And was it at that point that he asked to talk to an attorney before he spoke with you?

A: That's correct.

Record at 503.

■ A violation of the Due Process clause of the Fourteenth Amendment oc-

curs when a defendant's post-*Miranda* silence is used for impeachment purposes. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). To find otherwise violates the inherent protections offered by the *Miranda* warnings that assure the accused that silence carries no penalty. *Bevis v. State,* 614 N.E.2d 599, 602 (Ind.Ct.App.1993).

■ Initially, we conclude that there was a *Doyle* violation, but we note that Hightower waived his claim of a *Doyle* violation by failing to object at trial. Failure to assert an objection during trial waives the issue on appeal. However, Hightower claims that the violation resulted in fundamental error, which cannot be waived. Fundamental error occurs when a substantial, blatant violation of basic principles of due process renders a trial unfair to the defendant. *Taylor v. State,* 717 N.E.2d 90, 93 (Ind.1999) (citation omitted). A *Doyle* claim may be fundamental error. *Id.* To establish fundamental error, however, the error "must be a substantial and blatant violation of basic principles rendering the trial unfair to the defendant." *Collins v. State,* 567 N.E.2d 798, 801 (Ind. 1991). Although testimony regarding Hightower's post-*Miranda* silence was presented, the error was not so substantial and blatant as to render his trial unfair.

■ To determine whether a *Doyle* violation denied a defendant a fair trial, *White v. State,* 647 N.E.2d 684, 687 (Ind. Ct.App.1995) provides a five factor test. The five factors examined are: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Id.* After examining these factors, we conclude that the error in allowing the witness to testify about Hightower's post-*Miranda* silence did not deny Hightower a fair trial.

First, we do find that the prosecution used Hightower's post-arrest silence to allow the jury an opportunity to draw the impermissible inference that through his silence Hightower had something to hide. Officer Underwood initiated the discussion of *Miranda* rights in his response to the prosecutor's general question. Thereafter, the prosecutor continued to pursue this inappropriate line of questioning.

Next, we look at the quantum of evidence and determine that the evidence against Hightower is overwhelming. As bookkeeper, Hightower was in charge of the financial records and bank accounts of Daly. During a three month period of time, Hightower received $17,500 from Daly's bank accounts. Checks for $14,000 were written to Hightower's cleaning service. The checks to the cleaning service indicated two different and non-existent addresses. Additionally, although all of Daly's other cancelled checks were returned, the checks written to Hightower and his cleaning service were never recovered. Also, Daly's computer records were altered on other checks to account for a shortage of $5600.

Further, the intensity and frequency of the reference to Hightower's silence was minimal. The prosecutor did not frequently or intensely refer to his invocation. In fact, although he was the first witness, the prosecutor only engaged in a short question and answer session with Officer Underwood regarding Hightower's post-*Miranda* silence. Finally, the trial judge did not have an opportunity to grant a motion for mistrial or give a curative instruction because the defendant did not object to the line of questioning.

After examining these factors from *White,* we conclude that because the evidence against Hightower was overwhelming and the questioning about his post-*Miranda* silence was minimal, the *Doyle* violation was harmless.

## II. Exclusion of Evidence

Next, Hightower argues that the trial court erred when it excluded a facsimile Kamen purportedly faxed to Angela Mansfield, the attorney Hightower hired to resolve his child support matters. During Kamen's testimony, she indicated that she could not recall how much money Hightower was paid by Daly. Yet, in the facsimile she allegedly faxed to Hightower's attorney, she stated that Hightower made $500 per week. Thus, during his cross-examination of Kamen, Hightower moved to introduce the fax into evidence to impeach Kamen's credibility. The State objected to the introduction of the fax because Kamen claims that the fax is a forgery. The trial court excluded the document because it had not been authenticated under Indiana Evidence Rule 901.

■ The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Christian v. State*, 710 N.E.2d 582, 583 (Ind.Ct.App. 1999). We will reverse a trial court's decision only for an abuse of discretion, that is when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* To prevail when claiming an error in the admission or exclusion of evidence, a substantial right of the party must be affected. *Geiger v. State*, 721 N.E.2d 891, 898 (Ind.Ct.App.1999).

Specifically, Hightower contends that the fax should have been admitted under Indiana Evidence Rule 613(b) as extrinsic evidence of a prior inconsistent statement. He also claims that even if the fax was inadmissible as extrinsic evidence, the trial court should have allowed him to question Kamen regarding the fax under Indiana Evidence Rule 613.[1]

■ Evidence Rule 613(b) allows for the admission of extrinsic evidence of a witness's prior inconsistent statement. Thus, a prior inconsistent written statement may be admitted into evidence to impeach a witness's credibility. But, the prior inconsistent statement must be authenticated before its admission. Authentication requires the proponent of the evidence to prove that "the matter in question is what its proponent claims." Indiana Evidence Rule 901. Here, Hightower was required to show that the fax is a letter written by Kamen. Kamen, however, claims it is a forgery. Indiana Evidence Rules 901 and 902 provide several ways to authenticate a document.

■ Hightower alleges that the fax was authenticated under Indiana Evidence Rule 901 because it was certified as a public record. He argues that since it was filed with a court in his child support proceeding and since the document contained a court stamp that the fax was a "true and complete copy" of a document filed in court, that the fax qualifies as a public record under 901(b)(7). Evidence Rule 901(b)(7) provides that a public record is authenticated by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data complication, in any form, is from the public office where items of this nature are kept." Evidence

---

1. Indiana Rule of Evidence 613 states:
   (a) **Examining Witness Concerning Prior Statement.** In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
   (b) **Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to statements of a party-opponent as defined in Rule 801(d)(2).

Rule 901(b)(7) addresses records not certified under Rule 902. 13A ROBERT LOWELL MILLER, INDIANA PRACTICE, INDIANA EVIDENCE § 901.207 (2nd ed.1995). A public record authenticated under Rule 901(b)(7) without being certified under 902 must be an original record within the meaning of the original document rule. *Id.* In the instant case, the fax was not an original document and therefore, was not authenticated under Evidence Rule 901(b)(7).

Furthermore, the fax was not authenticated as a public record under 902(1). To be authenticated under 902(1), the written attestation must be original. MILLER at § 902.101. There was no original attestation on the fax. Thus, the fax was not authenticated under Evidence Rule 902.

■ Extrinsic evidence may be used to impeach a witness only if the evidence is in a form that makes it otherwise admissible. *See Montgomery Ward, Inc. v. Koepke,* 585 N.E.2d 683, 685 (Ind.Ct.App.1992) (finding that documents were properly excluded where they had not been admitted into evidence and were merely hearsay reports), *amended on other grounds.* Since the document here was not authenticated under Evidence Rules 901 or 902, it could not be admitted under Evidence Rule 613(b).

■ Hightower also claims that he could have authenticated the fax through Mansfield's testimony. However, Hightower never explained how Mansfield could have authenticated the fax under Evidence Rule 901. In fact, the record is devoid of an explanation showing us how this would have been accomplished and whether it could have been accomplished. An offer of proof must be made on cross-examination if counsel believes the trial court has im-

properly limited a line of questioning or has erroneously sustained an objection. *Arhelger v. State,* 714 N.E.2d 659, 666 (Ind.Ct.App.1999). Here, since Hightower never explained how Mansfield's testimony could have authenticated the fax, Hightower waived review of this issue.

■ Finally, Hightower argues that he should have been allowed under Evidence Rule 613(a) to question Kamen regarding the fax even if the fax was not admissible. We note it is unclear whether Hightower was not allowed to question about the fax. The court ruled on Hightower's motion to admit the fax. Record at 752. The court did not rule on whether Hightower could question Kamen on the fax. Be that as it may, the court determined the fax could not be properly authenticated. A document which cannot be properly authenticated is not reliable and therefore, has little probative value under Indiana Evidence Rule 401.[2] Moreover, any limited probative value is outweighed by the prejudicial impact of reference to a document which has not been and cannot be determined to be reliable. *See* Indiana Evidence Rule 403.[3] Therefore, the trial court did not err in failing to permit questioning about this facsimile.

### III. Sentencing

■ Finally, Hightower contends that the trial court erred by sentencing him to consecutive terms of imprisonment. Specifically, Hightower argues that under IND. CODE § 35–50–1–2, his conduct qualifies as a single episode of criminal conduct which would preclude his consecutive sentences. IND.CODE § 35–50–1–2(c) states:

[E]xcept for crimes of violence, the total of the consecutive terms of imprison-

---

2. Indiana Evidence Rule 401 states:
   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

3. Indiana Evidence Rule 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

ment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

The legislature defined an episode of criminal conduct to mean "offenses or a connected series of offenses that are closely related in time, place, and circumstance." IND.CODE § 35–50–1–2(b).

Here, Hightower's convictions arise from crimes he committed with four separate checks written on separate dates for different amounts. Thus, Hightower's offenses do not constitute a single episode of criminal conduct because the incidents are separated in time, place and circumstance. *See Tedlock v. State,* 656 N.E.2d 273 (Ind. Ct.App.1995). Furthermore, Hightower concedes that his offenses are separate incidents that occurred over a three month period of time. As a result, the trial court did not err in sentencing Hightower.

Judgment affirmed.

SULLIVAN, J. and BAILEY, J., concur.