Stephen SEKETA, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–0404–CR–169.

Court of Appeals of Indiana.

Nov. 18, 2004.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

KIRSCH, Chief Judge.

Stephen Seketa appeals his convictions for aggravated battery,[1] a Class B felony, and conspiracy to commit aggravated battery,[2] a Class B felony, raising the following restated issues:

I. Whether the trial court abused its discretion by limiting Seketa's cross-examination of his co-defendant regarding plea discussions and a plea agreement that the co-defendant was offered but rejected.

II. Whether the trial court abused its discretion by limiting Seketa's cross-examination of the victim concerning the victim's civil suit against Putnam County to recover for his injuries.

III. Whether the State presented sufficient evidence to convict Seketa of

---

1. *See* IC 35–42–2–1.5.

2. *See* IC 35–41–5–2(a); IC 35–42–2–1.5.

3. Poynter confirmed that, in "jail lingo," a snitch is a person who informs authorities about another's criminal activities. *Transcript 1* at 135.

aggravated battery and conspiracy to commit aggravated battery.

We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

In February 2003, Seketa, Roy Poynter, Jr., Joshua Doane, and Brian Dixie were inmates housed at the Putnam County Jail. The four men lived in the same cell block, which consisted of six separate two-man cells. Seketa and Poynter were cell mates.

Prior to their incarceration, Seketa and Dixie had been friends. While in jail, rumors circulated that Dixie was a "snitch."[3] *Transcript 1* at 135.[4] Upon Dixie's assurances that the rumors were not true, Seketa "stuck up for Brian Dixie on the blocks." *Transcript 2* at 10. After three weeks of defending Dixie on a daily basis, Seketa learned about a Hendricks County police report that proved Dixie was a "snitch." In February 2003, Seketa and Poynter attended a self-help meeting in the Putnam County Jail. During the meeting, Seketa obtained a copy of the police report, which, indeed, verified that Dixie had acted as an informant. After the meeting, Seketa, Poynter, and Doane gathered in Seketa's jail cell and reread the police report. Seketa then decided to confront Dixie.

Three or four hours later, Seketa, Poynter, and Doane entered Dixie's cell and beat him. Dixie sustained such severe injuries from the attack that one of his kidneys had to be removed. Moments af-

---

4. The court reporter did not number the transcript pages consecutively, but instead began the numbering of each of the two volumes with "1." Therefore, we will cite to the volumes as *Transcript 1* and *Transcript 2*.

ter the attack, Seketa forced Dixie to read the incriminating police report to the entire cell block and admit that he was an informant.

Although all three inmates were charged in connection with the incident, Seketa was tried separately. During his trial, the State called Doane, Poynter, and Dixie, among others, as witnesses. Although Doane refused to testify, Poynter testified that he, Doane, and Seketa had attacked Dixie in his cell. Poynter testified that he was offered a plea agreement in connection with the attack, but that the agreement was unsatisfactory and he had rejected it. Over Seketa's objection, the trial court prevented Seketa from questioning Poynter any further about the plea agreement, but did allow questioning of Poynter outside the presence of the jury as an offer to prove.

Dixie testified that he had been in the Putnam County Jail for three weeks prior to the attack. During that time, other inmates had called him insulting names, and Seketa, Doane, and Poynter had taken personal items from his cell. Dixie further testified that Seketa, Doane, and Poynter had entered his cell one night and attacked him with punches and kicks while he lay on the floor curled up in a ball. On cross-examination, Seketa's attorney questioned Dixie about whether he had an attorney for a civil suit, whether he had brought a tort claim suit against the county, and whether he was trying to recover money in connection with his injuries. Dixie confirmed that he was pursuing a civil suit. Seketa's attorney then said, "And you understand that the bigger you make your story, the more outrageous ... the more money that you're going to collect, right?" *Transcript 1* at 217. The State objected that this questioning was argumentative, and the trial court sustained the objection.

*Id.* Seketa had no further questions on this topic.

Seketa was convicted of aggravated battery and conspiracy to commit aggravated battery. He now appeals.

## DISCUSSION AND DECISION

### I.

Seketa first contends that the trial court abused its discretion in limiting his cross-examination of Poynter concerning Poynter's plea discussions and his rejection of a plea agreement from the State. He argues that Poynter turned down the plea agreement because it was not sufficiently beneficial, but testified anyway with the hope that his testimony would induce a more beneficial plea agreement. *Appellant's Brief* at 7. Seketa asserts that the trial court's limitation on his questioning prevented him from fully showing Poynter's prejudice and bias.

Seketa recognizes that the trial court has wide discretion to determine the scope of cross-examination, and only an abuse of that discretion warrants reversal. *McCorker v. State*, 797 N.E.2d 257, 266 (Ind.2003). He also notes that this discretion must be balanced against "the Sixth Amendment of the United States Constitution[, which] guarantees a defendant the right to confront witnesses against him." *Id.* (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). This right is secured for defendants in state criminal proceedings through the Fourteenth Amendment. *Id.*

Our supreme court has acknowledged the importance of fully disclosing to the jury any beneficial agreement between an accomplice and the State, even when those agreements are not reduced to writing. *Id.* (citing *Morrison v. State*, 686 N.E.2d 817, 818 (Ind.1997)); *Wright v. State*, 690 N.E.2d 1098, 1113 (Ind.1997).

" 'This rule serves to help the jury better assess the reliability and honesty of the felon-witness.' " *McCorker*, 797 N.E.2d at 266 (quoting *Morrison*, 686 N.E.2d at 819).

■ Nevertheless, our supreme court has also held that the duty to disclose arises when there is a confirmed promise of leniency in exchange for testimony and that preliminary discussions are not matters which are subject to mandatory disclosure. *Sigler v. State*, 700 N.E.2d 809, 812 (Ind.Ct.App.1998), *trans. denied* (1999); *Wright*, 690 N.E.2d at 1113. An express agreement requiring disclosure does not exist if a witness testifies favorably in the hope of leniency, and the State neither confirms nor denies leniency to the witness. *Sigler*, 700 N.E.2d at 812; *Wright*, 690 N.E.2d at 1113.

■ Here, the trial court was fully aware of the importance of revealing Poynter's potential bias. Although the State objected to questions about Poynter's proposed plea agreement, the trial court overruled that objection noting, "You understand that obviously jurors are entitled to know possible bias or reasons for testimony." *Transcript 1* at 152.

The trial court then suggested that additional discussion take place outside the presence of the jury. As his offer to prove, Seketa questioned Poynter as to whether he had been offered a plea agreement. Poynter confirmed that one had been offered, but that he had turned it down. The discussion continued:

Q. And the reason you're testifying here today is to try to make a result of even a better plea bargain, is that fair to say?

A. No. I'm here to tell the truth.

Q. You're here to tell the truth and you don't expect to gain anything from the State for your cooperation, is that what you're saying?

A. No.

. . . .

Q. So you're trying to tell us today that you're not trying to gain any favors, you're just trying to tell the truth, is that right?

A. Yes.

*Transcript 1* at 153–54.

Still outside the presence of the jury, the trial court questioned the State as to whether it had entered into any agreement with Poynter. The State confirmed that there was no pending offer, and also confirmed with Poynter that he would be testifying without an agreement.

Back in the presence of the jury, the trial court then limited Seketa's scope of cross-examination to the following:

Q. Mr. Poynter you were offered a plea bargain in this matter, is that correct?

A. Yes.

Q. And that plea bargain was not satisfactory to you, is that correct?

A. Yes.

Q. And you rejected that plea bargain?

A. Yes.

*Id.* at 156.

The trial court did not abuse its discretion by limiting Seketa's cross-examination of Poynter on the question of plea discussions or the rejected plea agreement. The trial court was aware that Poynter had the potential to be prejudiced or biased against Seketa. In Seketa's offer to prove, the trial court learned that Poynter was testifying against Seketa not, as Seketa argued, to obtain a better plea but, instead, to "tell the truth." *Id.* at 153. Furthermore, there was no pending plea agreement; even if Poynter had hoped for leniency, no disclosure of that information was required because the State had made no promise of leniency. *See Sigler*, 700

N.E.2d at 812; *Wright,* 690 N.E.2d at 1113.

## II.

Seketa next argues that the trial court abused its discretion when it limited his ability to cross-examine Dixie on the topic of Dixie's civil lawsuit against the county, and thus excluded that evidence. More specifically, he argues that Dixie's financial motive for testifying against Seketa, i.e., to recover damages in his civil suit, was relevant to the question of Dixie's credibility. *Appellant's Brief* at 14. Furthermore, Seketa argues that the exclusion of evidence concerning the civil suit deprived the jury of understanding Dixie's bias toward the prosecution.

 As previously noted, the trial court has wide discretion to determine the scope of cross-examination, and only an abuse of that discretion warrants reversal. *McCorker,* 797 N.E.2d at 266. The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Dorsey v. State,* 802 N.E.2d 991, 994 (Ind.Ct.App.2004); *Hightower v. State,* 735 N.E.2d 1209, 1214 (Ind.Ct.App. 2000), *trans. denied.* Moreover, erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Dorsey,* 802 N.E.2d at 994; *Hightower,* 735 N.E.2d at 1214.

Prior to trial, the trial court granted the State's motion in limine to exclude evidence on the topic of Dixie's civil lawsuit against the county. During trial, Seketa pointed out that it was Dixie's word against his as to the identity of his attackers and asked:

Q. So, essentially it is your word, isn't it?

A. Right.

Q. Now sir as I understand it based upon what the Prosecutor said that you are trying to collect money from the County for this, is that right?

A. Yes.

Q. You've got yourself a lawyer in Indianapolis?

A. Yes.

Q. Brought a tort claim against the County?

A. Yes.

Q. And you understand that the bigger you make your story, the more outrageous,

Mr. HEADLEY: Objection your honor.

Q. the more money that you're going to collect, right?

COURT: Argumentative. Counsel, other question.

Q. You are hoping to collect as much money as possible are you not sir?

MR. HEADLEY: Objection.

COURT: Other questions. Other topics.

MR. BOGGESS: Your honor I would rest. That's all.

*Transcript 1* at 217.

 Here, the motion in limine clearly covered the testimony about the civil lawsuit. However, the above testimony reveals that the jury learned about the lawsuit and could infer that Dixie may have had a motive to favor the prosecution. Because Dixie had filed only his tort claim notice, there was little more that the jury could have learned from Dixie about his civil lawsuit. Seketa was able to elicit sufficient information to allow the jury to see Dixie's bias, if any. Seketa was not prejudiced and his substantial rights were not affected by the trial court's decision to limit Seketa's cross-examination on the topic of Dixie's civil lawsuit. *See Dorsey,*

802 N.E.2d at 994; *Hightower,* 735 N.E.2d at 1214.

## III.

▮ Finally, Seketa challenges the sufficiency of the evidence concerning his convictions for aggravated battery and conspiracy to commit aggravated battery. Our standard of review in cases where the sufficiency of the evidence is challenged is well settled. We will not reweigh the evidence or consider the credibility of witnesses. *Neville v. State,* 802 N.E.2d 516, 518 (Ind.Ct.App.2004), *trans. denied.* Only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom will be considered. *Id.* "An inference cannot be based on evidence that is uncertain or speculative or which raises merely a conjecture or possibility." *Id.* (citing *Vasquez v. State,* 741 N.E.2d 1214, 1216 (Ind.2001)). "We will affirm a conviction only when each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt." *Id.*

To establish that Seketa committed the crime of aggravated battery against Dixie, the State had to show that Seketa knowingly or intentionally inflicted an injury creating a substantial risk of death or protracted loss or impairment of the function of a bodily member or organ. *Lush v. State,* 783 N.E.2d 1191, 1195–96 (Ind.Ct. App.2003) (citing IC 35–42–2–1.5). Seketa argues that without DNA, fingerprints, or other physical evidence, the State failed to produce sufficient evidence of Seketa's involvement in the aggravated battery. *Appellant's Brief* at 19.

▮ We begin by noting that the uncorroborated testimony of a single witness is sufficient to sustain a conviction on appeal. *Toney v. State,* 715 N.E.2d 367,

369 (Ind.1999). Here, two witnesses testified that Seketa was involved in the battery. The testimony of Poynter and Dixie confirmed that Poynter, Doane, and Seketa entered Dixie's cell, that Doane began to kick and punch Dixie, and that Poynter soon joined in the beating. Thereafter, Seketa ordered them to stop and hit Dixie two times, hard, on his left side. Dixie explained that the pain was excruciating. Seketa's insufficiency assertion fails in light of the fact that two witnesses clearly testified that Seketa was involved in the battery, intentionally hit Dixie, and caused an injury so severe that Dixie's kidney had to be removed. Sufficient evidence existed for the jury to convict Seketa of the aggravated battery charge.

▮ By contrast, the evidence is insufficient to convict Seketa of conspiracy to commit aggravated battery. "A person commits conspiracy when: (1) with intent to commit a felony; (2) the person agrees with another person to commit the felony; and (3) an overt act is performed by the defendant or the person with whom the defendant made the agreement in furtherance of that agreement." *Stokes v. State,* 801 N.E.2d 1263, 1273 (Ind.Ct.App.2004) (citing IC 35–41–5–2).

▮ To establish that Seketa committed conspiracy to commit aggravated battery against Dixie, the State had to prove that Seketa agreed with his fellow inmates to knowingly or intentionally inflict an injury on Dixie that would cause serious disfigurement or loss of a bodily function or organ, and that he took a step in furtherance of that agreement. The conspiracy cannot be inferred from the commission of the criminal act alone, or from the overt act alone taken pursuant to the criminal activity. *Woods v. State,* 274 Ind. 624, 626, 413 N.E.2d 572, 573 (1980).

■ The evidence presented to the jury revealed that Dixie and Seketa had been friends prior to their incarceration; that Dixie assured Seketa that he was not an informant, but Seketa obtained a police report stating otherwise; that Seketa, Doane, and Poynter gathered in Seketa's cell to discuss the report; that Seketa said that he was going to confront Dixie; that Seketa planned to ·have Dixie read the police report aloud to embarrass him; and that Poynter knew that something might happen but that "nothing was planned." *Transcript 1* at 138.

While there is evidence that Seketa intended to confront Dixie about his lie, the evidence is insufficient to find the inmates agreed to commit an aggravated battery. While an agreement to humiliate Dixie or even to rough him up a little could be inferred, there is insufficient evidence to

prove that Seketa conspired to commit a felony battery on Dixie.[5] *See Woods,* 274 Ind. at 629, 413 N.E.2d at 575. Finding that the State presented insufficient evidence of conspiracy to commit aggravated battery, we reverse Seketa's conviction on that count. Because we note that the trial court ordered Seketa's sentences to run concurrently, we need not remand the case to address sentencing issues.[6]

Affirmed in part and reversed in part.

BAKER, J., and ROBB, J., concur.

---

5. Battery is a Class B misdemeanor if a person touches another person in a rude, insolent, or angry manner, and a Class A misdemeanor if that touching results in injury to the other person. *See* IC 35–42–2–1. If Seketa agreed with his fellow inmates merely to scare Dixie or push him around, Seketa would not have been guilty of conspiring to commit a felony battery under IC 35–41–5–2.

6. Seketa also raises the issue of whether his convictions for both aggravated battery and conspiracy to commit aggravated battery violate Indiana's prohibition against double jeopardy. Because we reverse Seketa's conviction for conspiracy to commit aggravated battery on the basis that there was insufficient evidence to support that conviction, we need not reach the double jeopardy issue.