## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 16 2019, 5:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terrance Lonnell-Collier,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 16, 2019

Court of Appeals Case No.
19A-CR-105

Appeal from the
Cass Superior Court

The Honorable
Richard A. Maughmer, Judge

Trial Court Cause No.
09D02-1710-F1-5

**Kirsch, Judge.**

[1] Terrance Lonnell-Collier ("Collier") appeals his convictions for attempted murder,[1] a Level 1 felony, and conspiracy to commit armed robbery,[2] a Level 3 felony, and he raises two issues:

> I. Whether there was sufficient evidence to support his conviction for attempted murder; and

> II. Whether there was sufficient evidence to support his conviction for conspiracy to commit armed robbery.

[2] We affirm.

## Facts and Procedural History

[3] In the months leading up to October 2017, Cody Tunis ("Tunis") gave Alicia Hill[3] ("Hill") marijuana and advanced her about $300 to $400 for a deposit on her apartment in Logansport, Indiana. *Tr. Vol. 2* at 237-38. Sometime before October, Tunis began asking Hill to pay him back for both the rent advancement and the marijuana. *Id*. at 196, 238.

[4] On October 1, 2017, Hill contacted Tunis and asked him if he would be home that evening because she wanted to pay him the money she owed for the rent advancement. *Id.* at 239. That same day, Hill spoke with Collier, but the

---

[1] *See* Ind. Code § 35-42-1-1(2); Ind. Code § 35-41-5-1(a).

[2] *See* Ind. Code § 35-42-5-1(a); Ind. Code § 35-41-5-2(a).

[3] At trial, several witnesses referred to Hill by her nickname, "Noonie." *See, e.g., Tr. Vol. 2* at 144, 173, 186, 229, 237.

content of that conversation is unknown. *Id.* at 147. Later in the day, Hill spent time with Collier at his home. *Id.* at 150. As cousins, Hill and Collier had a close relationship. *Id.* at 198, 241.

[5] Later that evening, Collier, Hill, and two unidentified men ("the two men") departed from Collier's home together in Collier's girlfriend's black Jeep. *Id.* at 150-51. Hill drove the group to Tunis's home and parked in an alley behind the home. *Id.* at 244-45. Collier and the two men exited the Jeep and sat down at a picnic table in Tunis's backyard while Hill walked to the front door. *Id.*; *Tr. Vol. 3* at 24. Hill left the Jeep running. *Tr. Vol. 3* at 6.

[6] As Hill approached Tunis's front door, she was greeted by Andrea Melton ("Melton"), Tunis's fiancé. *Tr. Vol. 2* at 194-95, 236. Tunis, Melton, their two children, and a mutual friend were eating fajitas and Hill shared a bite, eating some food off of Tunis's plate. *Id.* at 195, 241; *Tr. Vol. 3* at 25. When Tunis asked Hill about the money she owed him, Hill told Tunis that Collier wanted to speak with him outside because Collier wanted to "holler" at Tunis. *Tr. Vol. 2* at 241. When Tunis looked out the window and saw Collier and the two men sitting in his yard, he feared that he was going to get jumped. *Id.* at 242-43. Before Hill led Tunis outside to meet with Collier, Tunis told Melton to lock the front door. *Tr. Vol. 3* at 26.

[7] When Tunis walked outside, Collier and the two men stood up from the picnic table, and Collier walked toward Tunis. *Tr. Vol. 2* at 245. Tunis stuck his hand out to Collier in an attempt to greet him cordially, but Collier pulled a gun out

of the front of his pants and pointed it directly at Tunis's face, eventually resting the barrel of the gun against Tunis's forehead. *Id.* at 246-47. Collier demanded, "give me the dope and the money." *Id.* at 247. Tunis explained that he did not have any money, so Collier instead insisted that Tunis give Collier his vehicle, a Chrysler 300. *Id.* at 201, 247. Tunis agreed to get the keys for the car from inside his house, but Collier withdrew his request for the car keys because he believed that Tunis had guns inside the house. *Id.* at 248-49. Collier then grabbed Tunis by the shirt. *Id.* at 249. Collier briefly turned away from Tunis and looked at the two men; Tunis, believing this gave him the opportunity to flee, swatted at Collier's gun, momentarily pushing it aside, and turned back toward his house. *Id.* at 249-50; *Tr. Vol. 3* at 28-29. Two or three seconds later, Collier shot Tunis at point blank range in Tunis's lower back, with the bullet striking just above Tunis's right buttock and close to his tailbone. *Tr. Vol. 2* at 202, 249; *Tr. Vol. 3* at 7, 36. Collier, Hill, and the two men ran to the Jeep, entered it, and sped away. *Tr. Vol. 3* at 30. Tunis was rushed to the hospital, where he was placed in a medically-induced coma for several days. *Id.* at 31. His injuries left him permanently disabled. *Id*. at 78.

[8] On October 3, 2017, the State charged Collier with attempted murder, a Level 1 felony, and on June 18, 2018, it filed two more charges: attempted robbery resulting in serious bodily injury, a Level 2 felony, and conspiracy to commit armed robbery as a Level 3 felony. *Appellant's App. Vol. II* at 16, 53.

[9] The charge for conspiracy to commit armed robbery reads as follows:

> Lonnell Collier did knowingly or intentionally agree with Alicia
> Hill and other persons to take property from Cody Tunis using
> force or by threatening the use of force, while . . . Lonnell Collier
> was armed with a deadly weapon, and a party to this agreement
> did take a substantial step in furtherance thereof:  Alicia Hill
> contacted Cody Tunis and arranged a meeting with him as a
> pretext to lure him outside of his home[.]

*Id.* at 54.

Collier was tried before a jury on November 14 and 15, 2018, and at the end of the second day, he was found guilty on all three counts.  *Id.* at 121; *Tr. Vol. 3* at 67.  On December 11, 2018, the trial court imposed consecutive sentences of thirty-five years for attempted murder and nine years for conspiracy to commit armed robbery, and it vacated the conviction for attempted robbery resulting in serious bodily injury.  *Tr. Vol. 3* at 78-79.  Collier now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

Collier argues that the State failed to present sufficient evidence for both of his convictions.  When reviewing sufficiency claims, we will not reweigh the evidence or consider the credibility of witnesses but will only consider the evidence most favorable to the verdict, together with all reasonable inferences that flow therefrom.  *Neville v. State,* 802 N.E.2d 516, 518 (Ind. Ct. App. 2004), *trans. denied*.  However, an inference cannot be based on evidence that is uncertain or speculative or which raises merely a conjecture or possibility. *Vasquez v. State,* 741 N.E.2d 1214, 1216 (Ind. 2001).  We will affirm a

conviction only when each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Seketa v. State*, 817 N.E.2d 690, 696 (Ind. Ct. App. 2004).

## I.    Sufficiency of Evidence – Attempted Murder

Collier argues that the evidence for his attempted murder conviction was insufficient because the State failed to prove that he acted with the requisite specific intent to kill Tunis.

> Typically, to prove that a person has committed an attempt crime, the State must show that the defendant engaged in conduct that constitutes a substantial step toward the commission of the crime attempted, while acting with the same culpability of that crime. I.C. § 35-41-5-1. However, our supreme court has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder, despite that the culpability requirement for murder includes the lesser standard of knowingly.

*Fry v. State*, 885 N.E.2d 742, 750 (Ind. Ct. App. 2008) (internal citation and quotation marks omitted), *trans. denied*. Therefore, the State was required to prove that Collier acted with the specific intent to kill Tunis, and while doing so, engaged in a substantial step toward killing Tunis. *See id*.

Collier argues that the evidence was insufficient to prove he acted with specific intent because the evidence merely "suggests an accidental firing" of the gun. *Appellant's Br.* at 15. In support, he correctly observes that as Tunis turned

away from Collier to flee, Tunis tried to swat Collier's gun away and that the gun fired only shortly thereafter. *Tr. Vol. 2* at 249-50; *Tr. Vol. 3* at 28-29. Relying on *Harris v. State*, Collier argues that this evidence is not "strongly corroborative" of the "firmness" of his intent to kill Tunis. 425 N.E.2d 112, 115-16 (Ind. 1981) (*quoting Zickefoose v. State*, 270 Ind. 618, 622-23, 388 N.E.2d 507, 510 (1981)).

[14] We disagree. Here, Collier drew a gun and pressed it against Tunis's forehead. *Tr. Vol. 2* at 246-47. Contrary to his argument, Collier did not fire his gun simultaneously with the swatting of the gun but fired it two or three seconds later. *Tr. Vol. 3* at 36. Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *Fry,* 885 N.E.2d at 750. "[D]ischarging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill." *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006). Collier did not inadvertently fire the gun. Because Collier fired the gun two or three seconds after Tunis swatted it, the evidence was sufficient to show that he fired the gun with the calculated purpose and specific intent to kill Tunis. *See Fry*, 885 N.E.2d at 850. Thus, despite Collier's argument to the contrary, the State's evidence was "strongly corroborative" of Collier's specific intent to kill Tunis. Moreover, Collier's shooting of Tunis was a "substantial step" toward the commission of attempted murder. *See Harris*, 425 N.E.2d at 115-16. Thus, the State presented sufficient evidence to prove that Collier acted with specific intent to kill Tunis and to support his conviction for attempted murder.

## II. Sufficiency of Evidence – Conspiracy to Commit Armed Robbery

[15] Even though Collier was convicted of conspiracy to commit *armed* robbery, he first contends the evidence was insufficient even to prove he committed conspiracy to commit robbery. A conspiracy involves an intelligent and deliberate agreement, *i.e.*, a meeting of minds, between the parties. *Woods v. State*, 274 Ind. 624, 631, 413 N.E.2d 572, 576 (1980); *Conn v. State*, 948 N.E.2d 849, 853 (Ind. Ct. App. 2011). Mere association with a co-conspirator, standing alone, is insufficient to support a conviction for conspiracy, *Porter v. State*, 715 N.E.2d 868, 871 (Ind. 1999), and a "conspiracy may not be established by mere suspicion." *Woods*, 413 N.E.2d at 576. However, the State need not prove a formal agreement; circumstantial evidence implying an agreement is enough. *Taylor v. State*, 86 N.E.3d 157, 164 (Ind. 2017). An agreement may be inferred from a defendant's actions and the circumstances surrounding his involvement. *Conn*, 948 N.E.2d at 853. "[A] conviction for conspiracy may, and often will, rest solely on circumstantial evidence." *Id*. (quoting *Minniefield v. State*, 512 N.E.2d 1103, 1105 (Ind. 1987)). Thus, to prove that Collier conspired to rob[4] Tunis, the State was required to show that Collier, with the intent to commit robbery, agreed with Hill or the two men to rob Tunis, and that Hill or the two

---

[4] A person commits robbery, a Level 5 felony, if the person "knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear[.]" I.C. § 35-42-5-1(a).

men performed an overt act in furtherance of the agreement. *See Appellant's App. Vol. II* at 54; *see also* Ind. Code § 35-41-5-2; Ind. Code § 35-42-5-1.

[16] Here, the State presented sufficient evidence that Collier conspired with Hill and the two men to rob Tunis. The evidence plainly shows that Collier, Hill, and the two men hatched a coordinated, calculated plan. Collier and Hill spoke earlier in the day. *Tr. Vol. 2* at 147. Hill arranged the meeting with Tunis at his home, under the pretense of paying money back to Tunis, and brought Collier and the two men over to Tunis's home. *Id.* at 147, 239. Hill left the Jeep running to allow them to quickly flee the scene after they committed their crime. *Tr. Vol. 3* at 6. While at Tunis's home, instead of paying Tunis the money she owed him, Hill lured Tunis outside to talk to Collier. *Tr. Vol. 2* at 241. As Collier confronted Tunis, the two men arose from the picnic table and walked toward Tunis, as if to provide backup for Collier. *Id.* at 245. Collier then demanded money, "dope," and the keys to Tunis's Chrysler 300 while pressing the barrel of his gun against Tunis's forehead. *Id.* at 201, 246-47. Once Collier shot Tunis, Collier, Hill, and the two men ran together to the Jeep and sped away. *Tr. Vol. 3* at 30. Post-crime conduct, such as fleeing together from the scene, as here, can support a conspiracy conviction. *See Shane v. State*, 716 N.E.2d 391, 397 (Ind. 1999). These facts establish that Collier, Hill, and the two men conspired to rob Tunis and committed at least one overt act in furtherance of that conspiracy. *See* I.C. § 35-41-5-2; *Taylor*, 86 N.E.3d at 164.

[17] We also reject Collier's argument that the State failed to present sufficient evidence for the crime for which he was actually convicted - conspiracy to

commit *armed* robbery.  To support Collier's conviction, the State was required to prove that Collier, with the intent to commit armed robbery, agreed with another person to commit armed robbery and that Collier or an accomplice performed an overt act in furtherance of the agreement.  *See* I.C. § 35-41-5-2; *Taylor*, 86 N.E.3d at 164.

[18]  Here, Collier's actions, viewed in context of the actions of Tunis, Hill, and the two men, provided sufficient circumstantial evidence to support his conviction for conspiracy to commit armed robbery.  *See Taylor*, 83 N.E.3d at 164.  For instance, because Tunis admitted that he was a drug dealer, the jury could have reasonably concluded that Tunis possessed a gun, and was willing to use it, because of the dangers inherent to selling illegal drugs.  *Tr. Vol. 2* at 196, 237-38, 243.  This conclusion would have been especially reasonable to the jury because during the confrontation, Collier withdrew his command that Tunis retrieve his car keys because Collier feared that Tunis would retrieve a gun if he went inside his house.  *Id.* at 248-49.  Moreover, this inference was reasonable also because Collier did not attempt to rob Tunis without help but instead brought the two men to serve as backup if Collier's confrontation with Tunis went awry.  The behavior of the two men during the confrontation also supported the inference that Collier agreed with the Hill and the two men to rob Tunis while Collier was armed:  1) there was no evidence that the two men appeared to be surprised when Collier drew his gun from his waistband; 2) the two men arose from the picnic table when Collier confronted Tunis; and 3) the two men moved closer to Tunis and Collier as the confrontation between Collier and Tunis reached its

apex. *Id.* at 245. As to Hill's claim that she was surprised that Collier brought a gun, *id.* at 202, the jury was free to discount Hill's testimony, especially since she admitted on the stand that she had perjured herself earlier in her testimony when she claimed she had never bought drugs from Tunis. *Id.* at 190, 196-97. Thus, based on the foregoing evidence, the jury could have inferred an agreement between Collier and Hill and the two men based on Collier's actions and "the circumstances surrounding [his] involvement." *See Conn*, 948 N.E.2d at 853. The State presented sufficient evidence to prove beyond a reasonable doubt that Collier committed conspiracy to commit armed robbery.

[19] Affirmed.

Vaidik, C.J., and Altice, J., concur.