Olugbala P. SUGGS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A01–0710–CR–477.

Court of Appeals of Indiana.

April 10, 2008.

Paula M. Sauer, Danville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Olugbala P. Suggs appeals his conviction for attempted theft as a class D felony[1]

---

1. Ind.Code §§ 35–43–4–2 (2004); 35–41–5–1 (2004).

and his status as an habitual offender.[2] Suggs raises two issues, which we restate as:

I. Whether the trial court committed fundamental error by failing to instruct the jury regarding accomplice liability for the attempted theft charge; and

II. Whether the trial court committed fundamental error by admitting copies of certified court documents in the habitual offender proceedings.

We affirm.

The relevant facts follow. On April 10, 2007, Tonya Heidorn, a loss prevention officer at Meijer, observed Suggs and two women, Linal Culbreth and Trealena Allen,[3] in the electronics department acting suspiciously. Suggs threw what appeared to be a compact disc into the cart, and the women proceeded to a cash register. Suggs stayed nearby while the women attempted to purchase $589.84 in merchandise with a credit card belonging to Shane Phillips. When the women could not provide appropriate identification, the transaction was cancelled, and the women left the store. Heidorn followed the women and encountered Officer Anthony Fite of the Avon Police Department entering the store. Heidorn explained the situation to Officer Fite, and Officer Fite asked the women to stop. The women ran but were apprehended by Officer Fite.

While Officer Fite was talking to the women, Heindorn saw Suggs exit the store. Officer Fite confronted Suggs as he was attempting to enter a nearby vehicle, and Suggs denied knowing the two women. However, a wallet belonging to Shane Phil-

lips was found near Suggs's feet. Additionally, after he was arrested, the police found credit cards belonging to Desiree Hagan in Suggs's pocket. Culbreth had possession of Hagan's purse.

The State charged Suggs with: (1) Count I, attempted theft as a class D felony for attempting to pay for the items at Meijer with a stolen credit card; (2) Count II, receiving stolen property as a class D felony for retaining Phillips's stolen wallet, driver's license, and credit cards; (3) Count III, receiving stolen property as a class D felony[4] for retaining Hagan's stolen credit card and gift card; and (4) Count IV, being an habitual offender.

During opening arguments at the jury trial, the State argued that Suggs, Culbreth, and Allen were involved in "a common scheme." Transcript at 122–123. During closing arguments, the State argued that Culbreth, Allen, and Suggs were "all working together" and that Suggs was "in concert" with the two women. *Id.* at 400, 418. Neither the State nor Suggs requested an instruction on accomplice liability. The jury found Suggs guilty of Count I, attempted theft, and Count III, receiving stolen property related to Hagan's credit card, but not guilty of Count II, receiving stolen property related to Phillips's possessions.

During the habitual offender phase, the State sought to admit State's Exhibits 16, 17, and 18. State's Exhibit 16 is a copy of certified court documents related to Suggs's 1991 plea to robbery as a class B felony. State's Exhibit 17 is a copy of certified court documents related to Suggs's 1991 plea to robbery as a class B

---

**2.** Ind.Code § 35–50–2–8 (Supp.2005).

**3.** Culbreth testified that Suggs's brother, Charles Suggs, was "me and Ms. Allen's boyfriend." Transcript at 349.

**4.** Ind.Code § 35–43–4–2 (2004).

felony and confinement as a class B felony. State's Exhibit 18 is a copy of certified court documents related to Suggs's 2005 conviction for theft as a class D felony. Suggs did not object to the admission of the documents. The jury found Suggs to be an habitual offender.

The trial court sentenced Suggs to one and one-half years on Count I and three years on Count III, enhanced by four and one-half years due to Suggs's status as an habitual offender. The trial court ordered that the sentences for Count I and Count III be served concurrently.

## I.

■ The first issue is whether the trial court committed fundamental error by failing to instruct the jury regarding accomplice liability for the attempted theft charge.[5] Suggs argues that the jury should have been instructed regarding accomplice liability because the State argued accomplice liability in its closing arguments. According to Suggs, without the instruction, the jury could only convict him of attempting to steal the merchandise himself, and the evidence was insufficient to convict him "under any other theory but accomplice liability." Appellant's Brief at 15.

■ "In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.*

The Indiana Supreme Court has held that "[w]here the facts in the case raise a reasonable inference that the crime was carried out with an accomplice, it is appropriate for the judge to give such an instruction." *Hampton v. State*, 719 N.E.2d 803, 807 (Ind.1999). First, it is not clear that the State was arguing that Suggs was an accomplice rather than a principal in the crime.

Suggs was charged with and convicted of attempted theft as a class D felony. Specifically, the State alleged that Suggs "did attempt to commit the crime of Theft by intentionally and knowingly enter[ing] into the Meijer store and select[ing] items knowing they were going to be [paid] for by using a stolen credit card which conduct constituted a substantial step toward the commission of the crime of Theft...." Appellant's Appendix at 7. During opening arguments at the jury trial, the State argued that Suggs, Culbreth, and Allen were involved in "a common scheme."[6] Transcript at 122–123. During closing arguments, the State argued that Culbreth, Allen, and Suggs were "all working together" and that Suggs was "in concert" with the two women. *Id.* at 400, 418. The accomplice liability statute, Ind.Code § 35–41–2–4, provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense." The State ap-

---

5. Suggs raises no issue regarding his conviction for receiving stolen property as a class D felony.

6. During a hearing after the State presented its case, the State specifically argued accomplice liability for the attempted theft charge. However, the jury was not present during this hearing.

pears not to have argued that Suggs aided, induced, or caused the two women to commit the offense of attempted theft, but rather to have argued that he was a principal in the offense.

Additionally, even assuming that accomplice liability instructions should have been given, we conclude that the alleged error did not result in fundamental error. First, we note that Ind.Code § 35–41–2–4, which governs accomplice liability, "does not establish it as a separate crime, but merely as a separate basis of liability for the crime charged." *Hampton*, 719 N.E.2d at 807. "[A] defendant may be convicted on evidence of aiding or inducing even though the State charged the defendant as the principal." [7] *Whitener v. State*, 696 N.E.2d 40, 44 (Ind.1998). Moreover, the State can change its theory of the case during the trial. *See, e.g., id.* at 42, 44 (finding no error where the State argued during opening statements that it would prove defendant was the individual who shot into the car, but during closing statements, the State argued that, "even if the jury could not find that defendant was the shooter, the jury could still convict him under Ind.Code § 35–41–2–4 because he had aided or induced the others in the commission of the crime"). Finally, a defendant is equally guilty whether he acted as the principal or merely an accomplice, and "while jury unanimity is required as to the defendant's guilt, it is not required as to the theory of the defendant's culpability." *Taylor v. State*, 840 N.E.2d 324, 333 (Ind.2006). Given this law, we cannot conclude that Suggs was denied fundamental

due process even assuming that the State argued accomplice liability to the jury but no instruction was given. *See Whitener*, 696 N.E.2d at 44.

Moreover, we conclude that Suggs cannot establish substantial harm or substantial potential for harm due to the lack of accomplice liability instructions because the evidence was sufficient to convict him as a principal. Suggs was an active participant in the attempted theft. He placed items in the cart and stood nearby while the two women attempted to pay for the items with a stolen credit card. *See, e.g., Davis v. State*, 835 N.E.2d 1102, 1111 n. 4 (Ind.Ct.App.2005) (holding that the evidence was sufficient to convict the defendant as a principal in resisting law enforcement where the defendant was in the vehicle and told the driver not to stop and that "because the evidence was sufficient to convict [the defendant] as a principal, we need not address [his] argument that the jury was not instructed that it could convict [him] as an accomplice pursuant to Indiana Code Section 35–41–2–4"), *trans. denied; see also Ballard v. State*, 537 N.E.2d 32, 34 (Ind.1989) (holding that instructions regarding accessory liability were not necessary where the defendant was being charged as a participant in the crime and the defendant entered the store with his brother, left, then returned and stood by the door as his brother took the money from the cash register, placed it in a bag, and handed it to the defendant).

## II.

The next issue is whether the trial court committed fundamental error

---

7. In support of his argument Suggs cites several Washington state decisions. See Appellant's Brief at 12–13 (citing *State v. Davenport*, 100 Wash.2d 757, 675 P.2d 1213, 1218 (1984); *State v. Spencer*, 111 Wash.App. 401, 45 P.3d 209, 215 (2002); *State v. Herrell*, 113 Wash.App. 1046, 2002 WL 31106558, 2002 Wash.App. Lexis 2381 (Wash.App.2002)).

However, these cases are distinguishable. In *Davenport*, the Washington Supreme Court held that "[w]hile it is not unconstitutional to charge a person as a principal and convict him as an accomplice, the *court must instruct* the jury on accomplice liability." *Davenport*, 675 P.2d at 1218. Indiana has no analogous rule.

by admitting copies of certified court documents in the habitual offender proceedings. "In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Ortiz,* 766 N.E.2d at 375. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.*

Suggs argues that fundamental error occurred when the trial court admitted State's Exhibits 16, 17, and 18 during the habitual offender phase of Suggs's trial. State's Exhibits 16, 17, and 18 are copies of certified copies of court records evidencing Suggs's prior convictions for robbery as a class B felony and theft as a class D felony. Suggs points out that the court clerk's seals or certifications on the documents are not the originals. Rather, copies of the certified documents were entered into evidence.

█  Ind. Evidence Rule 902(1) provides that the following documents are self-authenticating:

Domestic public documents. The original or a duplicate of a domestic official record proved in the following manner: An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of

the record, or by his deputy. Such publication or copy need not be accompanied by proof that such officer has the custody. Proof that such officer does or does not have custody of the record may be made by the certificate of a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office.

"To be authenticated under 902(1), the written attestation must be original." *Hightower v. State,* 735 N.E.2d 1209, 1215 (Ind.Ct.App.2000) (citing 13A Robert Lowell Miller, Indiana Practice, Indiana Evidence § 902.101 (3rd ed. 2007) ("Copies of the records are admissible, but the attestation itself must be an original rather than a photocopy, at least in criminal habitual offender prosecutions")), *trans. denied; see also Kelly v. State,* 561 N.E.2d 771 (Ind.1990) (holding, under a prior Indiana trial rule similar to the current Ind. Evidence Rule 902(1), that a photocopy of a certification does not provide certification necessary for proper authentication).[8] Thus, Suggs is correct that an original certification was necessary for State's Exhibits 16, 17, and 18 to be admissible.

Despite this error, Suggs has not shown that he is entitled to relief because he has failed to demonstrate fundamental error. Suggs makes no argument that the documents are not authentic. Further, Suggs conceded during his habitual offender closing argument that he had the prior robbery and theft convictions. We conclude

---

8. The State attempts to distinguish *Kelly* by citing *Johnson v. State,* 622 N.E.2d 172, 174 (Ind.1993), *reh'g denied. Johnson* is inapposite. It concerned the propriety of a stamped clerk certification, not a copy of a certification.

that the fact that the certifications were copies rather than originals did not deprive Suggs of a fair trial and did not result in fundamental error.

For the foregoing reasons, we affirm Suggs's convictions for attempted theft as a class D felony, receiving stolen property as a class D felony, and his status as an habitual offender.

Affirmed.

BARNES, J., and VAIDIK, J., concur.