Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 02 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOANNA GREEN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARCIE L. GRANT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 13A01-1109-PC-422 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

### APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable Kenneth L. Lopp, Judge
Cause No. 13C01-1105-PC-001

**May 2, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Marcie L. Grant ("Grant") pleaded guilty to Class B felony dealing in cocaine and Class C felony dealing in a Schedule IV controlled substance and was sentenced to an aggregate sentence of ten years with four years suspended. Grant then filed a petition for post-conviction relief claiming that her plea was invalid and that she was denied the effective assistance of trial counsel. The post-conviction court denied Grant's petition, and Grant appeals. On appeal, Grant presents three issues, which we restate as:

I.    Whether the post-conviction court erred in concluding that there was an adequate factual basis for Grant's plea of guilty to Class B felony dealing in cocaine;

II.   Whether the post-conviction court erred in concluding that Grant was not denied the effective assistance of trial counsel; and

III.  Whether the post-conviction court erred in concluding that Grant's plea was knowingly, voluntarily, and intelligently entered.

We affirm.

### Facts and Procedural History

On July 1, 2008, an individual informed the police that he had been at a certain residence in Crawford County, in which he had seen a large amount of cocaine, marijuana, and Xanax. This informant also told the police that he had purchased Xanax at this residence the day before and that the substance was located in the master bedroom. Based on this information, the police obtained a warrant to search the house referred to by the informant.

During the subsequent search of the house, the police found three people in the master bedroom: defendant Grant, her husband Clinton Grant ("Clinton"), and Leroy Weyrauch ("Weyrauch"). Clinton and Grant told the police that they owned the house.

2

When the police asked if there was anything in the house that the police should know about, both Clinton and Grant told them that there was cocaine in a trunk located underneath the bed. When the police searched the trunk, they discovered that it contained a white, powdery substance that field-tested positive as cocaine. Also inside the trunk were 150 plastic sandwich bags, a set of digital scales, and 250 dollars in cash. In or near the trunk, the police also found a sheet of paper with names and dollar amounts written in a list. A silver container located on a table beside the bed also contained a substance which field-tested positive as cocaine. The police also found marijuana and Xanax pills in the bedroom.

While the police searched the house, Grant, Clinton, and Weyrauch were read their Miranda rights. Clinton waived his rights and informed the police that he had been selling cocaine for approximately four weeks. He also told the police that his customers would typically purchase the cocaine and consume it at the house. Grant also waived her rights and admitted to selling Xanax. Grant also told the police that she had discovered that her husband had been dealing cocaine about two weeks earlier. Grant further told the police that Weyrauch had been prepared to consume cocaine when the police came to the house, at which time he flushed his cocaine down the toilet.

On July 3, 2008, the State charged Clinton with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony dealing in a schedule IV controlled substance, i.e. alprazolam,[1] Class D felony maintaining a common nuisance, and Class A misdemeanor possession of marijuana. On January 25, 2010, Grant agreed to plead

---

[1] Xanax is a brand name for alprazolam. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000807/.

guilty to dealing in cocaine, but as a Class B felony instead of a Class A felony, and Class C felony dealing in a controlled substance. In exchange, the State agreed to dismiss the remaining charges. Also, pursuant to the plea, the sentences Grant received were to be served concurrently.

At the guilty plea hearing, the trial court informed Grant of her rights, and the following colloquy took place:

| | |
|---|---|
| Court: | Alright, let's see if there's a factual basis. Please raise your right hand. |
| | (Witness sworn) |
| Grant: | Yes sir. |
| Court: | Alright, on the 2nd day of July, 2008, at or near 140 North Richardson Lane in Milltown, Crawford County, State of Indiana . . . were you present? |
| Grant: | Yes sir. |
| | * * * |
| [Defense counsel]: | Okay Ms. Grant, at that address . . . that's your residence with your husband, correct? |
| Grant: | Correct. |
| [Defense counsel]: | And his name is? |
| Grant: | Clinton Grant. |
| [Defense counsel]: | Okay and Clinton, at that time, had cocaine in the house, didn't he? |
| Grant: | Yes he did. |
| [Defense counsel]: | And he was dealing cocaine in the house, wasn't he? |
| Grant: | Yes he was. |
| [Defense counsel]: | And you knew about the dealing of the cocaine? |
| Grant: | Yes sir. |
| [Defense counsel]: | And you benefited from that dealing of cocaine? |
| Grant: | Yes sir. |
| [Defense counsel]: | So to the Class "B" Felony, Dealing in Cocaine, how would you plead? |
| Grant: | Guilty. |

4

Appellant's App. pp. 24-26. At the end of the hearing, the trial court took Grant's plea under advisement and ordered the probation department to prepare a pre-sentence investigation report.

On April 29, 2010, the trial court accepted Grant's guilty plea and sentenced Grant to ten years on the Class B felony conviction with six years executed and four years suspended to probation. The trial court also sentenced Grant to a concurrent term of eight years on the Class C felony conviction, with four years executed and four years suspended to probation. Thus, Grant received an aggregate term of ten years, with four years suspended. Grant did not file a direct appeal.

On May 19, 2011, Grant filed a petition for post-conviction relief. The post-conviction court held a hearing on Grant's motion on June 7, 2011. The trial court then issued an order denying Grant's petition on June 13, 2011. Grant filed a motion to correct error on June 30, 2011, requesting a hearing so that she could present testimony from her trial counsel. The post-conviction court granted this motion in part and held an evidentiary hearing on July 27, 2011. The post-conviction court then issued another order affirming its earlier denial of Grant's post-conviction petition. Grant now appeals.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super-appeals" and provide only a narrow remedy for subsequent collateral challenges. State v. Cooper, 935 N.E.2d 146, 148-49 (Ind. 2010). The post-conviction petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. Id. (citing Ind. Post-Conviction Rule 1(5)). A petitioner who appeals from the denial of his petition for post-conviction relief appeals

from a negative judgment. Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, to the extent that the appeal turns on factual issues, the petitioner must convince the court on appeal that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. Id. "In other words, the defendant must convince [the court on appeal] that there is no way within the law that the court below could have reached the decision it did." Id.

## I. Factual Basis

An Indiana court cannot accept a guilty plea unless there is an adequate factual basis for the plea. State v. Cooper, 935 N.E.2d 146, 150 (Ind. 2010) (citing Ind. Code § 35-35-1-3(b) (2008)). The purpose of the factual basis requirement is to ensure that a person who pleads guilty is truly guilty. Id. As the court in Cooper explained:

> [T]he court should satisfy itself that the defendant could be convicted if he or she elected to stand trial. A factual basis exists when there is evidence about the elements of the crime from which a court could conclude that the defendant is guilty. The presentation about facts need not prove guilt beyond a reasonable doubt. The original trial court's determination that the factual basis was adequate is clothed with the presumption of correctness.

935 N.E.2d at 150 (citations and internal quotations omitted). In light of these declared purposes for the requirement of a factual basis, claims about omissions in the factual basis have been unavailing when the omissions do not seem to demonstrate doubt about actual guilt. Id.

A court need not find evidence proving guilt beyond a reasonable doubt to conclude that a factual basis exists, as such a high standard would "transform the guilty plea hearing into a veritable bench trial, the very process that one pleading guilty seeks to

6

avoid." Butler v. State, 658 N.E.2d 72, 77 (Ind. 1995). Instead, a factual basis exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty, and even relatively minimal evidence has been held to be adequate. Id.

Here, Grant claims that there was an insufficient factual basis for her plea of guilty to Class B felony dealing in cocaine. Specifically, she insists that the evidence before the court at her guilty plea hearing demonstrates only that her husband, but not Grant, was guilty of dealing in cocaine.

The statute defining the offense of dealing in cocaine provides that a person commits dealing in cocaine if they: (1) knowingly or intentionally manufacture, finance the manufacture of, deliver, or finance the deliver of cocaine, or (2) possess cocaine with the intent to manufacture, finance the manufacture, delivery, or finance the delivery of cocaine. Ind. Code § 35-48-4-1(a) (2006).[2] Grant argues that there was no evidence in the factual basis that she possessed any cocaine with the intent to deliver.

Grant acknowledges that the post-conviction court noted the factors that are relevant when considering whether a defendant is guilty as an accomplice. But Grant claims that she was not charged with accomplice liability and that she did not plead guilty to being an accomplice. We disagree.

Contrary to Grant's claims, the State was not required to charge her or otherwise "prosecute" her as an accomplice. It is well established that a person can be charged as a

---

[2] "Delivery" is defined by statute as "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11.

7

principal and convicted as an accomplice. Specht v. State, 838 N.E.2d 1081, 1092 (Ind. Ct. App. 2005). This is so because the accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. Id. Thus, an individual who aids another person in committing a crime is as guilty of the crime as the actual perpetrator. Id. at 1093. In other words, "a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." Id.; see also Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense."). And an accomplice need not participate in each and every element of the crime in order to be convicted of it. Specht, 838 N.E.2d at 1092. In fact, the State can change its theory of the case during the trial. Suggs v. State, 883 N.E.2d 1188, 1192 (Ind. Ct. App. 2008).

In determining whether a person aided another in the commission of a crime, a court should consider the following four factors: (1) the defendant's presence at the scene of the crime; (2) the defendant's companionship with another engaged in criminal activity; (3) the defendant's failure to oppose the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. Vandivier v. State, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005) (citing Garland v. State, 788 N.E.2d 425, 431 (Ind. 2003)). Although the defendant's mere presence during the commission of the crime or her failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. Id. A defendant may be convicted as an accomplice where she

8

merely had a tangential involvement in the crime. Ajabu v. State, 693 N.E.2d 921, 937 (Ind. 1998). Indeed, our supreme court has noted that even a person who merely comforted or assisted the perpetrator after the offense may be convicted as an accomplice. Id. (citing Johnson v. State, 687 N.E.2d 345, 349 (Ind. 1997)). Evidence that the accomplice acted in concert with those who physically committed the elements of the crime is sufficient to support a conviction as an accomplice. Porter v. State, 715 N.E.2d 868, 870 (Ind. 1999).

Here, Grant was present at the scene of the crime, she was married to the principal who was engaged in the criminal activity, and she did not oppose the crime. Furthermore, she admitted to selling a controlled substance at the same location that her husband sold cocaine. She also admitted that she knew that her husband was dealing cocaine and that she benefited from his dealing. From this factual basis, the trial court could have reasonably concluded that Grant was guilty of aiding, inducing, or causing her husband to deal cocaine. See Echols v. State, 722 N.E.2d 805, 807 (Ind. 2000) (holding that evidence was sufficient to support defendant's conviction for murder and attempted murder under a theory of accomplice liability where defendant drove his nephew to an apartment complex, guns were clearly visible inside the car, and nephew shot at a crowd at the apartment complex); B.K.C. v. State, 781 N.E.2d 1157, 1165 (Ind. Ct. App. 2003) (holding that evidence was sufficient to support juvenile adjudication, under a theory of accomplice liability for robbery where juvenile accompanied perpetrator to restaurant, did nothing to oppose perpetrator when he brandished a weapon, ran and hid with perpetrator when other customers entered the restaurant, and demanded that restaurant

9

employee open a door through which juvenile and perpetrator fled). Therefore, the post-conviction court did not err in rejecting Grant's claim that there was no factual basis to support her plea of guilty to Class B felony dealing in cocaine.

Moreover, even if we were to assume that there was an inadequate factual basis to support Grant's plea of guilty, she must still demonstrate that this failure impacted her decision to plead guilty. See State v. Eiland, 723 N.E.2d 863, 865 (Ind. 2000). Here, Grant claims that she would not have pleaded guilty because the evidence showed only that her husband actually dealt cocaine. Again, we disagree.

Grant was in a bedroom with her husband and a customer who had just purchased cocaine. Grant knew where the cocaine was hidden in the room and was herself dealing Xanax from the room. She admitted that she had known for about two weeks that her husband had been dealing cocaine. And she admitted that she benefitted from her husband's illegal activity. In exchange for her plea, the State agreed to reduce the dealing in cocaine charge to a Class B felony and dismiss several other charges against Grant. Given the evidence against her, the post-conviction court could have reasonably concluded that Grant would have still chosen to accept the State's plea offer even if a proper factual basis had not been established at the guilty plea hearing.

## II. Ineffective Assistance of Trial Counsel

Grant also claims that her trial counsel was ineffective for advising her that she could be found guilty of dealing in cocaine and encouraged her to accept the State's plea offer. To prevail upon a claim of ineffective assistance of trial counsel, a defendant must demonstrate both that her trial counsel's performance was deficient and that she was

10

prejudiced by such deficient performance. Polk v. State, 822 N.E.2d 239, 244 (Ind. Ct. App. 2005), trans. denied (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Here, Grant claims that her trial counsel was ineffective for advising her that she could be found guilty of dealing in cocaine. Based upon our discussion above with regard to the factual basis, we conclude that this was not inaccurate advice. While the evidence of Grant's guilt might not have been overwhelming, it was sufficient to support a conviction for dealing in cocaine as an accomplice. Because Grant's trial counsel's advice was not erroneous, her trial counsel was not ineffective for rendering this advice to her.

### III. Knowing, Voluntary, and Intelligent Plea

Lastly, Grant claims that her plea was not made knowingly, voluntarily, or intelligently. Because a guilty plea constitutes a waiver of constitutional rights, this waiver requires the trial court to evaluate the validity of every plea before accepting it. Davis v. State, 675 N.E.2d 1097, 1102 (Ind. 1996). For a guilty plea to be valid, it must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. Diaz v. State, 934 N.E.2d 1089, 1094 (Ind. 2010).

Here, Grant argues that her plea was not voluntarily or intelligently made because it was based upon her counsel's allegedly inaccurate advice that she could be found guilty and convicted of dealing in cocaine. We have already concluded that Grant's trial counsel was not incorrect in his assessment. Because Grant's claim that her plea was based on erroneous advice is incorrect, the post-conviction court properly denied her claim that her plea was not knowingly, voluntarily, and intelligently entered.

11

## Conclusion

The post-conviction court did not err in concluding that Grant's guilty plea was supported by an adequate factual basis, that Grant's trial counsel was not ineffective, or that Grant's plea was knowingly, voluntarily, and intelligently entered.

Affirmed.

ROBB, J., and BAILEY, J., concur.