## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 07 2020, 8:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian Ellis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

May 7, 2020

Court of Appeals Case No.
19A-PC-1953

Appeal from the DeKalb Superior Court

The Honorable G. David Laur, Senior Judge

Trial Court Cause No.
17D01-1705-PC-3

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Brian Ellis was convicted of dealing in methamphetamine, a Class A felony, and possession of methamphetamine, a Class B felony. The trial court sentenced Ellis to serve twenty years for the dealing conviction and six years for the possession conviction, to be served concurrently in the Indiana Department of Correction ("DOC"). On direct appeal, Ellis challenged his dealing in methamphetamine conviction, and this court affirmed. *Ellis v. State*, No. 17A05-1512-CR-2179 (Ind. Ct. App. Sept. 22, 2016). In 2017, Ellis filed a petition for post-conviction relief and in 2018, he filed an amended petition claiming ineffective assistance of trial and appellate counsel. Following an evidentiary hearing, the post-conviction court denied Ellis' amended petition. Ellis now appeals, raising two issues for our review which we consolidate and restate as: whether the post-conviction court erred in determining Ellis' trial and appellate counsel were not ineffective. Concluding Ellis did not receive ineffective assistance of trial or appellate counsel and therefore, the post-conviction court did not err in denying his petition, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Ellis' direct appeal:

> On May 25, 2014, Mary Thacker and Mike Avery were working in their backyard in DeKalb County when they heard a loud

noise similar to an explosion and saw smoke coming from their neighbor's shed. Thacker saw Ellis and another person near the shed. Thacker and Avery smelled an odor like ammonia, and they alerted the police.

DeKalb County Sheriff's Department Deputies Larry Kees, Jarrid Treesh, and Courtney Fuller responded to Thacker and Avery's report. When they arrived, they spoke with Mable Ellis ("Mable"), Ellis's eighty-two-year-old mother and the property owner, who gave her consent to search. The officers saw a light on inside the shed in the backyard, heard voices, and smelled a chemical odor similar to ammonia. Deputy Treesh knocked on the door to the shed and opened the door. He saw two men seated in chairs, open beer bottles, and a reaction vessel – a plastic bottle containing a white granular substance, black flakes, and a bluish liquid, which the officers recognized as an active meth lab – between the two chairs. The men were later identified as Ellis and Tyler Cole. Cole told the deputies he was "just there to clean out a garage," and was released. He was later charged with and convicted of possessing methamphetamine. Ellis told Deputy Treesh that Cole was showing him how to manufacture methamphetamine.

From the shed and a garbage can outside the shed, law enforcement officers collected cold packs, Zippo lighter fluid, Coleman camp fuel, Liquid Lightening, coffee filters, battery casings, Kleen Out, blister packs of pseudoephedrine, and a "spent one-pot." They also searched the bedroom in which Ellis and his wife were staying and found drug paraphernalia, including a pipe, a measuring device, and needle nose pliers. On a dresser in the bedroom, officers discovered a credit card bearing Ellis's name amid several "tin foilies," which "are used a lot of times in the smoking of methamphetamine. . . ." In the sleeping compartment of Ellis's semi, which was parked at Mable's house, officers found a bag of methamphetamine between the wall of the cab and the mattress.

*Id.* at *1 (record citations omitted).

[3] On May 27, 2014, the State charged Ellis with the following: dealing in methamphetamine, a Class A felony[1]; possession of methamphetamine, a Class B felony; possession of precursors, a Class C felony; and possession of paraphernalia, a Class D felony. A jury trial was held on August 12-13, 2015. Cole initially told officers he was not involved in the methamphetamine that was located on the premises; however, at trial, Cole admitted that he possessed the methamphetamine in the bottle and that Ellis was not making methamphetamine with him that particular night. He stated, "It was me." [Prior Case] Transcript, Volume I at 212. Ellis also testified at trial and denied having previously told the officers that he was there to be trained to make methamphetamine. *See id.*, Vol. II at 75.[2] Ultimately, the jury found Ellis guilty of dealing in methamphetamine and possession of methamphetamine, and not guilty of possession of paraphernalia. The jury was unable to reach a verdict on the possession of precursors charge. The trial court ordered Ellis to serve an aggregate sentence of twenty years in the DOC.

[4] On direct appeal, Ellis' appellate counsel raised one claim, namely that the evidence was insufficient to support Ellis' dealing in methamphetamine

---

[1] The information specifically alleges that Ellis "knowingly or intentionally manufactured, financed the manufacture of, delivered, or financed the delivery of . . . Methamphetamine, pure or adulterated, and [he] manufactured, delivered or financed the delivery of the drug. . . in, on or within one thousand (1,000) feet of . . . a public park [and] a family housing complex[.]" [Prior Case] Appellant's Amended Appendix, Volume I at 17 (citation based on the .pdf pagination).

[2] Citation to Volume II of the prior case transcript is based on the .pdf pagination.

conviction. Ellis claimed the evidence was insufficient because there was no direct evidence that he was involved in the manufacturing of the methamphetamine. *Ellis*, No. 17A05-1512-CR-2179 at *2. A panel of this court disagreed, *id.* at *3, and held that the following evidence was sufficient to prove Ellis had constructive possession of the reaction vessel and other items frequently used to manufacture methamphetamine:

- Ellis told police he believed the bottle was a methamphetamine lab and Cole was showing him how to manufacture the drug and therefore, he clearly knew of the presence of the vessel.

- Ellis and Cole were found sitting in chairs with the reaction vessel located in between them and in plain view.

- Police located other items commonly used to manufacture methamphetamine in plain view inside the shed, including a grinder with white residue, camping fuel, Liquid Fire, salt, tape, tubes, pseudoephedrine, and battery casings.

- Police discovered a bag of methamphetamine in Ellis' truck, which he lives in for weeks at a time.

*Id.*

Given Ellis' close proximity to the vessel and items and his statement to police that Cole was showing him how to manufacture methamphetamine, this court concluded Ellis was capable of and had the intent to maintain dominion and

control over the items. *Id.* Ellis had also pointed to his and Cole's testimony at trial that Cole was solely responsible as evidence he was not involved in manufacturing methamphetamine. However, this court held that it may not reweigh the evidence; the jury is the trier of fact and the sole judge of witness credibility. *Id.* And as such, the jury was entitled to afford whatever weight and credibility to this testimony it believed was warranted. *Id.* Thus, because constructive possession of items used to manufacture methamphetamine is sufficient to prove that an appellant knowingly or intentionally manufactured the drug and Ellis constructively possessed the items, the court affirmed Ellis' dealing in methamphetamine conviction. *Id.* at *2-3.

[6] On May 3, 2017, Ellis filed his pro se petition for post-conviction relief alleging ineffective assistance of trial and appellate counsel and requested the appointment of counsel. The post-conviction court subsequently appointed Ellis a public defender. On November 29, 2018, Ellis, by counsel, filed an Amendment to Petition for Post Conviction Relief alleging that his trial counsel was ineffective for failing to tender a jury instruction on accomplice liability and that his appellate counsel was ineffective for failing to claim that the absence of an accomplice liability instruction constituted fundamental error. *See* Appendix to Brief of Appellant, Volume Two at 24-27.

[7] An evidentiary hearing was held on May 29, 2019, during which Ellis' trial counsel, Kevin Likes, and appellate counsel, Adam Squiller, both testified. When asked about trial strategy, Likes agreed that his strategy was to convince the jury that Cole, rather than Ellis, actually made the methamphetamine and

that Ellis' mere presence at the scene was not a crime. *See* [Post-Conviction] Transcript of Hearing ("PCR Tr.") at 5, 8. Likes further testified that he did not consider tendering a jury instruction on accomplice liability because the State charged Ellis as a direct participant in the crime, not an accomplice. He testified, "I'm not sure why I would tender an instruction about something that . . . wasn't one of the charges. [I]t seems kind of odd that . . . [I] would be arguing don't convict him on something he's not charged with." *Id.* at 7. Although Likes was unable to recall exactly what the prosecutor had argued during closing argument and was "not sure he was really arguing accomplice liability[,]" Likes believed the State was "straying into what [he] thought was getting into [the] area" of accomplice liability. *Id.* at 6. Therefore, Likes objected because Ellis had been charged as a direct participant, not an accomplice. Squiller did not recall the issues on appeal or whether he had considered raising the claim of fundamental error based on the trial court's failure to instruct the jury on accomplice liability.

[8] Following the hearing, the post-conviction court issued written findings of fact and conclusions of law denying Ellis' petition, and concluded, in pertinent part:

> 4. While both counsel have argued accomplice liability or lack thereof, the failure of [trial] counsel for [Ellis] to request such instruction or [Ellis'] appellate counsel to raise that issue on appeal does not rise to the standard of ineffective counsel and the evidence of [Ellis'] guilt was overwhelming.
>
> 5. The trial strategy of defense counsel not to request an instruction on accomplice liability and to highlight that issue was

not so deficient or unreasonable as to fall outside the objective standard of reasonableness.

6.     The failure of appellant [sic] counsel to raise the issue of ineffective trial counsel was not so deficient or unreasonable as to fall outside the objective standard of reasonableness.

7.     The Court does not conclude that the outcome would have been different had the instruction been given or the issue raised on appeal.

Appealed Order 5-6. Ellis now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Post-Conviction Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. On appeal, a petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). To prevail, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-

conviction court. *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006). When reviewing the post-conviction court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## II. Ineffective Assistance of Trial and Appellate Counsel

### A. Standard of Review

[10] The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel and mandates "that the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation omitted). The standard for ineffective assistance of counsel is the same standard for both trial and appellate counsel. *Garrett v. State,* 992 N.E.2d 710, 719 (Ind. 2013).

[11] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687, 694). A counsel's performance is deficient if it falls below an objective standard of

reasonableness based on prevailing professional norms. *Id*. To meet the test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824.

[12] When we consider a claim of ineffective assistance of counsel, we apply a "strong presumption . . . that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Counsel has wide latitude in selecting trial strategy and tactics, which we afford great deference. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). And isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

## B. Trial Counsel

[13] Ellis alleges that he was denied effective assistance of trial counsel because counsel failed to tender a jury instruction on accomplice liability.

[14]     Indiana's accomplice liability statute provides that a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]"  Ind. Code § 35-41-2-4.   The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged.  *Brooks v. State*, 895 N.E.2d 130, 133 (Ind. Ct. App. 2008).  As a general rule, mere presence at the scene of the crime is not itself sufficient to allow an inference of participation in the crime.  *Griffin v. State*, 413 N.E.2d 293, 295 (Ind. Ct. App. 1980).  Such presence may, however, be considered with other evidence as a factor in determining a defendant's guilt.  *Id.*

[15]     Ellis alleges his trial counsel's performance was deficient.  Specifically, he contends that although he was not charged as an accomplice, he could be convicted as such; there was evidence that Cole was the principal; and in closing arguments at trial, the State suggested Ellis could be liable even if he did not make the drugs and Cole did.[3]  Therefore, Ellis argues that the jury needed

---

[3] Ellis points to the following portion of the State's closing argument:

> [W]e've got one guy, trying to point a crooked finger at the other guy.  Say, well, I was there, he was just showing, he was showing me how to do it.  I wasn't actually doing it.  And the argument being well, presumably the argument is hey, it's not illegal for me to be present, you know, if somebody's making meth.  Well, I'm going to argue that this is something different, if those are the facts in the case.  If those are the facts in the case, *Brian Ellis being there is constructive.  It's constructive engagement, okay.  He's involved because he's there and somebody's showing him how to do it.  He's not calling the police.  He's not calling the fire department.  He's not taking steps to get this person out of there.*  He's fully involved and

to be instructed on the elements of accomplice liability. "[W]here the circumstances of the case raise a reasonable inference that the defendant acted as an accomplice, it is appropriate to instruct the jury on accomplice liability even where the defendant was charged as a principal." *Brooks*, 895 N.E.2d at 133.

[16] In closing arguments, Ellis' trial counsel argued that Ellis was merely present at the scene of the crime, which is not illegal; all of the items in the shed were legally obtained; and there was no direct evidence that Ellis committed a crime, only circumstantial evidence. *See* [Prior Case] Tr., Vol. II at 135-37, 142-43. At the PCR hearing, Likes testified that he did not consider tendering a jury instruction on accomplice liability because the State charged Ellis as a direct participant in the crime, not an accomplice. *See* PCR Tr. at 7. Ellis concedes he was charged as a principal but argues there was evidence that Cole was the principal and he was aiding Cole.[4] Cole initially pointed the finger at Ellis when talking to police but changed his story at trial and testified that he was the one making methamphetamine, not Ellis. However, the jury was not obligated to believe Cole's or Ellis' testimony and there was ample circumstantial

---

engaged in what's happening, constructively, if not, you could argue he's actively involved as the teacher, or as the student.

[Prior Case] Tr., Vol. II at 125-26 (emphasis added).

[4] In his brief, Ellis stated that he was charged only as the principal "[b]ut there was ample evidence that Cole was the principal, not least Cole's testimony that he and he alone had made the meth. And there was evidence, albeit tenuous, that [Ellis] had aided Cole." Brief of Appellant at 17 (record citation omitted).

evidence that Ellis acted as a principal rather than an accomplice. And the trial court properly instructed the jury on the elements of dealing in methamphetamine and the jury found Ellis guilty. *See* [Prior Case] Tr., Vol. II at 159.[5] Therefore, given the evidence in the record, we cannot conclude that Ellis' trial counsel was ineffective for failing to provide an alternate basis of liability for the jury to convict him. We will not second guess counsel's reasonable trial strategy in this regard.

[17] Even assuming for purposes of this appeal that trial counsel's performance was deficient, Ellis cannot show this failure would have resulted in a different outcome at trial. Here, the jury was instructed on the elements of dealing in methamphetamine and was convinced beyond a reasonable doubt that Ellis acted as a principal in the crime – that he knowingly or intentionally manufactured methamphetamine. The jury, as the sole judge of witness credibility, was not obligated to believe Cole's or Ellis' testimony regarding the nature of his participation. Given the overwhelming evidence of Ellis' guilt, we

---

[5] The trial court provided the following instruction:

> Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt. (1), the Defendant, Brian W. Ellis, (2), knowingly or intentionally manufactured, (3), methamphetamine, pure of adulterated and (4), the Defendant manufactured the methamphetamine in, on or within one thousand feet of a public park or a family housing complex. If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty of the crime of Dealing in Methamphetamine, a Class A Felony, as charged in Count I.

*Id.*

are unpersuaded that if the jury had been instructed on accomplice liability there is a reasonable probability that the outcome of Ellis' trial would have been different. An accomplice liability instruction would have simply provided the jury with an additional basis for liability and if convicted under that theory, Ellis would still have been convicted of dealing in methamphetamine. *See Suggs v. State*, 883 N.E.2d 1188, 1192 (Ind. Ct. App. 2008) (concluding that the defendant "cannot establish substantial harm or substantial potential for harm due to the lack of accomplice liability instructions because the evidence was sufficient to convict him as a principal."). As such, Ellis was not prejudiced by his trial counsel's alleged ineffective performance.

## C. Appellate Counsel

[18] Ellis also contends that he was denied effective assistance of appellate counsel on direct appeal because his counsel failed to claim that the absence of an accomplice liability instruction constituted fundamental error.[6]

[19] As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Benefield v. State*, 945 N.E.2d 791, 802 (Ind. Ct. App. 2011). Ineffective assistance claims of appellate

---

[6] We note that the post-conviction court appears not to have addressed this claim head on as it concluded that "[t]he failure of appellant [sic] counsel to raise the issue of ineffective trial counsel was not so deficient or unreasonable as to fall outside the objective standard of reasonableness." Appealed Order at 6. Instead, the post-conviction court framed it as appellate counsel's alleged failure to raise an ineffective assistance of trial counsel claim rather than acknowledging that Ellis' actual claim was that appellate counsel was ineffective for failing to claim that the absence of the instruction constituted fundamental error.

counsel generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Fisher*, 810 N.E.2d at 677. Ellis' claim fits into the second category.

[20] A finding of ineffective assistance of appellate counsel is very rare because "the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998) (internal quotation omitted). Our supreme court has explained that "reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Id.* at 194. To prevail on a claim of ineffective assistance of appellate counsel for waiver of issues, a petitioner must show (1) that the unraised issues are significant and obvious from the face of the record and (2) that the unraised issues are clearly stronger than the raised issues. *Timberlake v. State*, 753 N.E.2d 591, 606 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002).

[21] Ellis contends that the claim that the absence of an accomplice liability instruction constituted fundamental error was significant and obvious from the face of the record and clearly stronger than the sufficiency claim raised by appellate counsel on direct appeal. We disagree.

[22] "To preserve a claim of error in giving a jury instruction, trial counsel must timely object and clearly identify that claimed objectionable matter and the grounds for the objection." *Ferree v. State*, 124 N.E.3d 109, 115 (Ind. Ct. App.

2019), *trans. denied* (internal quotation omitted). And failure to timely object waives this issue for review. *Id.* An error may be fundamental and thus not subject to waiver, if it is a "substantial blatant violation of basic principles." *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998) (internal quotation omitted). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id*. "This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in 'egregious circumstances' that made a fair trial impossible." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (citation omitted).

[23]     Just as we concluded Ellis' trial counsel was not deficient for failing to tender another basis for liability – in the form of an accomplice liability instruction – and Ellis was not prejudiced by this alleged failure, we are unpersuaded that the trial court's failure to give such an instruction *sua sponte* constituted fundamental error.

[24]     In *Suggs*, the defendant was charged with attempted theft after he went to a grocery store with two women and attempted to purchase merchandise with a stolen credit card. 883 N.E.2d at 1190. During opening statements of his trial, the State argued the defendant was part of a "common scheme" and during closing arguments, the State argued the three individuals were "all working together" and the defendant worked "in concert" with the other two. *Id.* The defendant was convicted of attempted theft and on appeal, he argued that the trial court's failure to provide the jury with an accomplice liability instruction constituted fundamental error. *Id.* at 1191.

[25] A panel of this court disagreed for several reasons. First, it was not clear that the State was arguing that the defendant was an accomplice rather than a principal because he was charged with attempted theft – that he knowingly and intentionally entered the grocery store and selected items knowing they were going to be paid for with a stolen credit. *Id.* Based on the language of the accomplice liability statute, this court concluded that the State appeared *not* to have argued that the defendant aided, induced, or caused the two women to commit attempted theft; instead, the State argued he was a principal. *Id.* at 1192. Second, accomplice liability is not a separate crime but a separate basis of liability for the charged offense; a defendant can be convicted as an accomplice even if charged as a principal; and the State is permitted to change its theory of the case during trial. *Id.* And finally, "a defendant is equally guilty whether he acted as the principal or merely an accomplice, and while jury unanimity is required as to the defendant's guilt, it is not required as to the theory of culpability." *Id.* (internal citation omitted). As such, this court concluded that the defendant was not denied fundamental due process "even assuming that the State argued accomplice liability to the jury but no instruction was given." *Id.* Such is the case here.

[26] As noted above, Ellis was charged and convicted as the principal. Ellis points to the following assertion in the State's closing argument as evidence that the State argued he was liable as an accomplice: "Ellis being there is constructive. It's constructive engagement, okay. He's involved because he's there and somebody's showing him how to [make methamphetamine]." [Prior Case] Tr.,

Vol. II at 126. However, we are not persuaded that the State was arguing Ellis aided, induced, or caused Cole to commit dealing in methamphetamine and there was sufficient evidence to support Ellis' role as a principal since he was actively participating.

[27] Even assuming Ellis' assertion was correct, he still cannot demonstrate fundamental error. The State is entitled to change its theory during trial and Ellis would have been equally guilty regardless of whether he acted as the principal or accomplice. *Suggs*, 883 N.E.2d at 1192. As the State phrases it, "An accomplice liability instruction is simply another avenue for reaching the same result." Brief of Appellee at 17. Moreover, in Ellis' direct appeal, a panel of this court held that the evidence established that Ellis constructively possessed the reactive vessel and other items used to manufacture methamphetamine and therefore affirmed his dealing in methamphetamine conviction as a principal. *Ellis*, No. 17A05-1512-CR-2179 at *3.

[28] Because Ellis has failed to prove fundamental error with respect to the lack of a jury instruction on accomplice liability, he has failed to demonstrate any prejudice resulting from appellate counsel's alleged deficient performance in failing to raise this issue. *See Benefield*, 945 N.E.2d at 803 ("[I]f an unpreserved error is found not to be fundamental, then appellate counsel cannot be ineffective for failing to raise it.").

# Conclusion

Ellis has failed to demonstrate both ineffective assistance of trial and appellate counsel.  Therefore, we conclude that the post-conviction court did not err in denying Ellis' petition for post-conviction relief.

Affirmed.

Bradford, C.J., and Altice, J., concur.